# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

## PEOPLE v MUSSER

Docket No. 145237. Argued March 6, 2013 (Calendar No. 5). Decided July 12, 2013.

John M. Musser was convicted by a jury in the Kent Circuit Court of two counts of second-degree criminal sexual conduct, MCL 750.520c(1)(a), and one count of assault and battery, MCL 750.81, for sexually touching an eleven-year-old girl in 2009 while the complainant and her family were at defendant's house. During defendant's interview with the police, the detectives made statements regarding the complainant's truthfulness, as well as that of child-victims in general. In addition, one detective indicated during the interview that he had completed hundreds of forensic interviews. The circuit court, James R. Redford, J., admitted the detectives' recorded statements to defendant during the police interview over defense objection, reasoning that the statements gave context to defendant's statements. After defendant moved for a mistrial, the circuit court instructed the jury that the detectives' statements were not evidence and were only to provide context for defendant's statements. The Court of Appeals, SAWYER, P.J., and MURPHY, C.J. and O'CONNELL, J., agreed with the circuit court's reasoning and affirmed in an unpublished opinion per curiam, issued February 21, 2012 (Docket No. 301765). The Supreme Court granted defendant's application for leave to appeal. 493 Mich 860 (2012).

In a unanimous opinion by Justice CAVANAGH, the Supreme Court *held*:

Out-of-court statements made by police investigators during the interrogation of a defendant that vouch for the credibility of another, that are not offered for the truth of the matter asserted but to provide context for the defendant's statements, are admissible if they are relevant for their proffered purpose in accordance with MRE 401; even if relevant, such statements may be excluded under MRE 403 if the probative value is substantially outweighed by the danger of unfair prejudice and a party may request, pursuant to MRE 105, that the scope of such testimony be properly limited and the jury instructed accordingly.

1. It is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial because it is within the jury's province to determine the truthfulness of witnesses. Pursuant to MRE 401, the party seeking to introduce a police interrogator's out-of-court statements through a recording or written transcript of the interview must explain how the statements are relevant to the proffered purpose of providing context for the defendant's responses. Even if the statements are relevant, they may be excluded under MRE 403 if the danger of unfair prejudice to the defendant substantially outweighs the probative value of the evidence sought to be introduced; in child-sexual-abuse cases the danger

of prejudice is high because such cases often hinge on credibility assessments. If such statements are admitted a party under MRE 105 may request an instruction restricting the evidence to its proper scope.

2. In this case, the circuit court abused its discretion by failing to redact the majority of the detectives' out-of-court statements from the interrogation recording in which they commented on credibility; most of the statements had no probative value and, even if there was some probative value to the statements that the trial court erroneously failed to redact, the prejudicial effect of the remaining statements outweighed any probative value because of the dangers inherent in child-sexual-abuse cases. Admission of the statements undermined the reliability of the verdict because the jury may have relied on the detectives' repeated out-of-court statements regarding the complainant's credibility, there was a lack of physical evidence and the comments created an aura of expertise for the one police investigator. The belated limiting instruction did not cure the error.

Court of Appeals' judgment reversed, defendant's convictions vacated, and the case remanded to the trial court for further proceedings.

©2013 State of Michigan

# Opinion

Chief Justice:          Justices:

Robert P. Young, Jr.  Michael F. Cavanagh
                      Stephen J. Markman
                      Mary Beth Kelly
                      Brian K. Zahra
                      Bridget M. McCormack
                      David F. Viviano

FILED JULY 12, 2013

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v                                            No. 145237

JOHN M. MUSSER,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

Defendant was convicted of two counts of second-degree criminal sexual conduct, MCL 750.520c(1)(a), and assault and battery, MCL 750.81,[1] arising out of accusations made by an eleven-year-old girl. The Court of Appeals affirmed defendant's convictions. We granted leave to appeal to consider whether out-of-court statements made by police investigators during an interrogation of a defendant that vouch for the credibility of

---

[1] We note that there is a discrepancy between the judgment of sentence and the jury's actual verdict. Because we are vacating defendant's convictions, this discrepancy is irrelevant.

another must be redacted from a recording of the interview before it is played for the jury.

At this juncture, we find it unnecessary to adopt a bright-line rule requiring the automatic redaction of such statements. Instead, applying our rules of evidence, we hold that if such out-of-court statements are not offered for the truth of the matter asserted, the statements may be admissible to the extent that the proponent of the evidence establishes that they are relevant for their proffered purpose as defined by MRE 401. Further, even if relevant, the statements may be excluded under MRE 403. Finally, upon request, the statements must be restricted to their proper scope and the jury instructed accordingly. MRE 105.

Under the facts of this case, we hold that the trial court abused its discretion by allowing all the detectives' statements commenting on credibility to be presented to the jury on the basis that the statements provided "context" for defendant's statements, when most of the detectives' statements were irrelevant for that purpose. Because the error in this case undermined the reliability of the verdict, we reverse the judgment of the Court of Appeals, vacate defendant's convictions, and remand the case to the trial court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

The convictions in this case relate to events occurring in the Spring of 2009 while the complainant and her family were at defendant's home.

The complainant testified that she, her mother, father, and brother went to defendant's home to watch a hockey game with defendant and his family. According to

2

the complainant, she became tired and slouched back on one of defendant's couches, attempting to fall asleep. One of defendant's children was asleep in the same room on another couch, while the adults and another child were downstairs in defendant's basement. Two other children were asleep somewhere else in defendant's home. The complainant testified that while she was feigning sleeping, defendant put his hands on her inner thighs and later touched her breasts while covering her with a blanket. The complainant also stated that defendant put his thumb under the waistband of her pants, which was near her underwear line. According to the complainant, after defendant left, she went downstairs and asked her parents if they could leave. The complainant's mother, Jennifer, testified that everything seemed normal when they left and, although there was testimony that the two families continued to see each other after the incident, Jennifer testified that the complainant was not interested in going to defendant's home. The complainant did not tell anyone about the incident for nearly a year.

A friend of the complainant testified that in late April 2010, she and the complainant were talking about secrets when the complainant stated that someone had touched her while at a gathering, but she did not indicate where she had been touched. Although the friend told the complainant that she needed to tell someone, the complainant did not do so until approximately two weeks later after getting into an argument with her mother.

Jennifer testified that in May 2010, she had been teasing the complainant over her homework when the complainant ran out of the room, upset. Jennifer followed the complainant to her bedroom to find out what was wrong. When the complainant began to cry and indicated that she did not wish to speak, Jennifer asked her a series of questions,

including whether she was fighting with a friend or whether someone in the neighborhood had hurt her. When the complainant answered negatively to Jennifer's questions, Jennifer asked the complainant if she was having a problem with a grownup, to which the complainant nodded "yes." Jennifer eventually asked the complainant if the problem was with defendant, who, according to the complainant's father, was a good friend with whom his family had spent countless hours. In response, the complainant shook her head "yes" and started to cry, but she would not reveal any of the details. Soon thereafter, the complainant's parents took the complainant to the Kent County Sheriff's Department (KCSD), which referred them to the Children's Assessment Center of Grand Rapids—a center that assesses children following reports of suspected child abuse. On May 11, 2010, the complainant was interviewed by KCSD Detective Edward Kolakowski. During that interview, the complainant revealed the full extent of the incident for the first time.

That same day, Detective Kolakowski and Detective William Heffron interviewed defendant. Defendant was informed by Detective Kolakowski when he arrived at the Sheriff's Department that the complainant had accused him of inappropriate touching while their families were watching a game a year earlier at defendant's home. Throughout the interview, defendant denied any improper contact with the complainant, but remembered coming upstairs to get a drink while the complainant and her family were watching a hockey game. Defendant stated that he saw the complainant asleep, hugged her, and gave her a kiss on her cheek or forehead. Defendant acknowledged that he had been drinking that night, that the complainant seemed vulnerable because she appeared to be asleep, and that his hands accidentally touched the skin of the

4

complainant's back when he put his arms around her. Defendant, however, explained that none of his actions were sexual, and he did not touch the complainant inappropriately or in the places that she claimed that she was touched. Defendant stated that he and the complainant had always been affectionate, and the complainant had often greeted defendant with a hug and a kiss when they saw each other.

During the interview, Detective Kolakowski and Detective Heffron made statements regarding the complainant and child-victims generally, including the following:

> DETECTIVE KOLAKOWSKI: . . . *Kids have a hard time lying about this stuff because they don't even want to talk about it, let alone they don't even want to talk about it to a mere fucking stranger.*
>
> DETECTIVE HEFFRON: Especially a 12 year old girl.
>
> DETECTIVE KOLAKOWSKI: And she tells me what happened? And she tells our counselors what happened? And these are — and —and with these interviews, too, it's not just a interview of, "tell me what happened," . . . they're . . . done with . . . Michigan adopted, basically, a forensic interview protocol that there's a special way that kids have to be interviewed. They're not interviewed like I can interview you, all right? . . . [Y]ou know what? If you can't do it for yourself, do it for your own little girl . . . . Make sure she knows that men have to answer to the truth. And make sure that [the complainant] knows that, you know what? [Y]eah, someone fucked up . . . . She's having a devastating time. She loves you. She cares about you. She cares about your family. You want to know what her concern was? You want to know why she waited to tell? Do you want me to tell you?
>
> [DEFENDANT]: Sure.
>
> DETECTIVE KOLAKOWSKI: I'll tell you. . . .
>
> \* \* \*
>
> DETECTIVE HEFFRON: *You know there's a big difference when we interview 4, 5, 6 year olds and when they get up around 10, 11, 12, 13.*

5

*There's a big difference. Four, five, six year old kids, they're easy to manipulate by parents, aunts, uncles—they're easy to manipulate. They're terrible actors. They're terrible. When kids start getting a little bit older they're better actors. They're—they're older, they're seeing more. She's 12. The big issue here is if she wanted to get you in trouble—she's smart enough, and she's only—and she's 12—if, for whatever reason, she wanted to get you in trouble she would—she would—*

[DEFENDANT]: That she would say that I fucked her?

DETECTIVE HEFFRON: Absolutely.

[DEFENDANT]: Yeah.

DETECTIVE HEFFRON: *Absolutely. "He put his hand down my pants, his finger was in my vagina" all of this "his mouth was on my breast" — that's what they would do if they're gonna lie to get somebody in trouble, . . . an older kid like that. Little kids, they never've* [sic] *been exposed to that stuff. They don't know. But it's pretty credible when she tells us, "Hey, he touched . . . me here" and "he put his hand on my breasts" and . . . "his hand started going down my pants but he couldn't." That's pretty credible; that's pretty detailed. Again, if there's no reason for her to make this crap up, why would she say it? This is the last thing . . . she wanted to do was talk to a total stranger about something like this. Why? Why is she gonna put herself through that if it didn't happen? We can't find anything. Kids don't lie about this stuff. They lie about their homework being done; they lie about, "yep, I did the dishes" when they didn't . . . [T]hey lie about "yeah, we were in bed by 10:00." They don't lie about this stuff if maybe she's in trouble for something. This is not the kind of stuff that kids make up to try to get out of some trouble that they're in. That's why this is so disturbing. . . . And again, if she's talking about "his hand was on my breast," she's not gonna make that crap up. She just isn't. And this is your opportunity for her to eventually see that you made a mistake, you're human, and you want to get this worked out so she has the least amount of stress/trauma, whatever, but that she gets the . . . feeling that "I love the man, the family. He made a mistake and someday as I'm older["]—because she's always gonna remember this—this didn't happen when she was 2 or 3 years old—they don't remember that stuff. She's always gonna remember this. At some point she will be able to accept, "Hey, this is what happened. We all make mistakes. He made a mistake." But you're gonna have to start by being upfront. And for you to sit here and say that "well, yep, she's telling the truth about this, but she's lying about that," . . . she's gonna have this report. She's gonna know exactly what you said, and whatever . . . message you want to send her that's . . .*

*up to you. We can't force you. But if she's saying you touched her breasts—I wasn't there for the interview [of the complainant] but [Kolakowski, who has] done a lot of interviewing, said, "Bill, there's no question this happened and the stuff that I'm aware of he probably did"— we just need to know why. Was it alcohol? Was it—I don't know what your sex life has been at home, but all we want to know is why. Were you ever molested as a child?*

[DEFENDANT]: No.

DETECTIVE HEFFRON: Help us out here.

[DEFENDANT]: You asked a lot of different questions right there. I don't know—I—I don't know what motivated me. I think I explained it, I was just trying to give her a peck. I don't know where this touching of the breast is coming from. [Emphasis added.]

In addition to other statements in the interview,[2] defendant made a pre-trial motion to exclude these emphasized statements. The trial court overruled defendant's objections, reasoning that the emphasized statements either gave context to defendant's statements or were "in the nature of the interrogation of the accused," and the questions and answers could be favorable to both parties.

At trial, a video recording of defendant's interview was played for the jury. Before the video was played, however, Detective Kolakowski testified regarding his experience with forensic interviews, stating that he had received special training in forensic interviewing techniques; that the technique requires the interviewer to inquire whether the child understands the difference between the truth and a lie and that older

---

[2] Defense counsel also moved to redact other portions of the interview. For purposes of this appeal, our analysis focuses only on those portions of the interview that were admitted over defense counsel's objections and were raised to this Court. Our limited grant order and resolution of this case should therefore not be construed to preclude defendant from raising additional objections on remand.

7

children, such as those around 11 years old, understand the difference between the two; that he had done "hundreds" of forensic interviews throughout his career; and that he had followed the forensic interview process when interviewing the complainant. The jury was then given a copy of the transcript, with the following oral instruction:

> You've been handed . . . what's going to be marked for appellate purposes as Exhibit 2-A. Again, the transcript is not evidence. It's the recording that's going to be played for you that's the evidence. . . . What you have to make your decision on is based on what . . . evidence that's admitted in court.

After the video was played, defense counsel moved for a mistrial, stating that he was essentially making a renewed motion to strike Detective Heffron's comments because, irrespective of Detective Kolakowski's comments regarding the complainant's credibility, Detective Heffron's statements were too prejudicial. The trial court denied defendant's motion. However, after an hour-long lunch recess, the judge gave the jury the following instruction in light of defendant's previous motion:

> [A]s relates to [the DVD], which before the lunch recess was played for you, there are many statements and questions by one or more law enforcement officers. These questions or statements, no matter how short or how long, are not evidence, and you must not consider them as such. Only the answers of [the defendant] are evidence. The questions or statements of the law enforcement officers are only provided to you to put into context the answers of [the defendant]. It is only the answers of [the defendant] that are evidence in this case.

In addition to the above testimony, an expert testified for each party, with the prosecution's expert stating that it is common for complainants to delay reporting their allegations, and the defense expert stating that delayed reporting can lead to incorrect recollections and that children are susceptible to suggestion by others, including their parents.

8

Defendant and his wife were the final witnesses. Defendant continued to deny having touched the complainant's breasts, inner thighs, stomach, or belt-line. Defendant's wife also testified, asserting that the complainant's testimony was flawed on the basis of calendars that she maintained to keep track of her family's schedules. From her records, she believed that the night in question occurred on a night that the complainant had a track meet. As a result, the complainant and her family could not have arrived at defendant's home until after the hockey play-off games that occurred on that date were over.

The jury found defendant guilty of two counts of second-degree criminal sexual conduct and one count of assault and battery, as a lesser-included offense of assault with the intent to commit criminal sexual conduct in the second degree.

Defendant appealed, arguing in relevant part, that the trial court abused its discretion by failing to redact numerous statements by the detectives that vouched for the complainant's credibility. The Court of Appeals affirmed. The Court reasoned that the officers' statements regarding the complainant's credibility were properly admitted, explaining that any introductory statements by the detectives provided context for the questions and defendant's statements in response.[3] We granted defendant's application for leave to appeal.[4]

---

[3] *People v Musser*, unpublished opinion per curiam of the Court of Appeals, issued February 21, 2012 (Docket No. 301675), pp 3-4.

[4] Specifically, this Court asked the parties to address:

> (1) whether statements in a recording of a police interview of a criminal defendant that vouch for the credibility of a witness, which would be inadmissible if stated by a trial witness, must be redacted from the

## II. STANDARD OF REVIEW

A trial court's decision to admit evidence "will not be disturbed absent an abuse of . . . discretion." *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes. *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). However, if an evidentiary error is a nonconstitutional, preserved error, then it "is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative." *People v Krueger*, 466 Mich 50, 54; 643 NW2d 223 (2002). An error is "outcome determinative if it undermined the reliability of the verdict" and, in making this determination, a court should "focus on the nature of the error in light of the weight and strength of the untainted evidence." *Id*. (quotation marks and citations omitted).

## III. LEGAL BACKGROUND

It is "[t]he Anglo-Saxon tradition of criminal justice . . . [that] makes jurors the judges of the credibility of testimony offered by witnesses." *United States v Bailey*, 444 US 394, 414; 100 S Ct 624; 62 L Ed 2d 575 (1980). Because it is the province of the jury to determine whether "a particular witness spoke the truth or fabricated a cock-and-bull story," *id*. at 414-415, it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial. *People v Buckey*,

---

recording before the jury views it; or (2) if the jury is allowed to see such a recording without redacting the vouching statements, what circumstances must be present and what, if any, protective measures must be in place. [*People v Musser*, 493 Mich 860 (2012).]

424 Mich 1, 17; 378 NW2d 432 (1985). See also, *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995).[5] Such comments have no probative value, *Buckey*, 424 Mich at 17, because "they do nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence." *Connecticut v Taft*, 306 Conn 749, 764; 51 A3d 988 (2012) (citation and quotation marks omitted). See also, *People v Row*, 135 Mich 505, 507; 98 NW 13 (1904) (explaining that opinion testimony regarding a complainant's veracity is not competent evidence). As a result, such statements are considered "superfluous" and are "inadmissible lay witness[] opinion on the believability of a [witness's] story" because the jury is "in just as good a position to evaluate the [witness's] testimony." *People v Smith*, 425 Mich 98, 109, 113; 387 NW2d 814 (1986).

This case, however, involves a twist on the traditional rule. Specifically, at issue is whether the rule barring testimony regarding the credibility of another person excludes out-of-court statements to the same effect that are contained in the recordings or transcripts of an interrogation. In such a case, the contents of the recording or transcript are *not* automatically admissible. Instead, our evidentiary rules are triggered, including the rules regarding hearsay.

Under Michigan's evidentiary rules, "hearsay" is an unsworn, out-of-court statement that is "offered in evidence to prove the truth of the matter asserted."

---

[5] Although I continue to adhere to the views expressed in my dissent in *Peterson*, 450 Mich at 381-398 (CAVANAGH, J., dissenting), I recognize that *Peterson* is the current majority law, and its validity is not at issue in this case.

MRE 801(c)[6]; *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007). Under MRE 802, hearsay is not admissible unless it "falls under one of the hearsay exceptions set forth in the Michigan Rules of Evidence." *Stamper*, 480 Mich at 3.[7] If, however, the proponent of the evidence offers the statement for a purpose other than to prove the truth of the matter asserted, then the statement, by definition, is not hearsay. MRE 801(c).

In this case, only the admissibility of the detectives' statements is at issue. Specifically, the prosecution asserts that the detectives' statements were properly admitted because they were not offered for the truth of the matter asserted in violation of the prohibition on vouching. Instead, the prosecution asserts that the detectives' statements were offered solely to provide context for defendant's statements that the prosecution wished to admit as an admission by a party opponent under MRE 801(d)(2).[8] Defendant, however, asserts that these statements should have been redacted from the interrogation recording before it was presented to the jury because the statements, in effect, improperly vouched for the complainant's credibility. Alternatively, defendant argues that the detectives' statements were irrelevant because they were unnecessary to provide context for defendant's statements. Thus, at issue is whether an interrogator's

---

[6] MRE 801 defines "hearsay" to include an "oral or written assertion," other than one that is made by the declarant while testifying at trial, that is "offered in evidence to prove the truth of the matter asserted." MRE 801(a), (c).

[7] See also, *McDaniel*, 469 Mich at 412.

[8] MRE 801(d)(2)(A) provides in part: "A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . the party's own statement . . . ." See also, *People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002) ("Admissions by a party are specifically excluded from hearsay . . . .").

out-of-court statements that vouch for the credibility of another person must be redacted from the recording of the interrogation before it is presented to the jury when the prosecution purports to offer the interrogator's out-of-court statements, *not* for the truth of the matter asserted, but *only* to place the defendant's statements in context for the jury.[9] Specifically, this case asks this Court to consider whether the rule precluding a witness from commenting on another person's credibility at trial is triggered by an interrogator's statements that are offered to provide context to a defendant's statements, rather than offered to prove the truth of the matter asserted, or whether the interrogator's statements that actually provide context to a defendant's statements have some probative value, unlike statements commenting on the credibility of another person that are offered for their truth.

Although this Court has yet to expressly opine on this issue, other jurisdictions have come to divergent conclusions. Specifically, some jurisdictions have held that there is "no meaningful difference" between allowing an officer to comment on another person's credibility while testifying at trial and allowing the officer to make the same comments on a tape recording in the context of an interrogation interview. See, e.g., *Washington v Jones*, 117 Wash App 89, 92; 68 P3d 1153 (2003). The logic behind this

---

[9] It bears emphasizing that if the prosecution offers or uses an interrogator's statements that vouch for the credibility of another person to prove the truth of the matter asserted at trial, the interrogator's statements would be inadmissible under the rule that a witness cannot comment on the credibility of another person, even if the out-of-court statements could somehow fall within a hearsay exception. As noted above, such comments are not probative of the matter and, thus, are not relevant. See *People v Knox*, 469 Mich 502, 509-510; 674 NW2d 366 (2004).

13

approach is that, in either case, the jury hears the police officer's opinion and "clothing the opinion in the garb of an interviewing technique does not help." *Id.* See also, *Washington v Demery*, 144 Wash 2d 753, 765; 30 P3d 1278 (2001) (Alexander, C.J., concurring); *id.* at 767 (Sanders, J., dissenting); *Kansas v Elnicki*, 279 Kan 47, 57; 105 P3d 1222 (2005) ("A jury is clearly prohibited from hearing such statements from the witness stand . . . and likewise should be prohibited from hearing them in a videotape, even if the statements are recommended and effective police interrogation tactics."); *Commonwealth v Kitchen*, 730 A2d 513, 521 (Pa Super, 1999) (explaining that accusing a defendant of lying during an interrogation is "akin to a prosecutor offering his or her opinion on the truth or falsity of the evidence presented by a criminal defendant" or his or her opinion regarding the guilt of the defendant, neither of which is admissible at trial). Accordingly, under this rationale, such statements must be redacted from a recording before it is submitted to a jury. *Id.* at 522.

Other jurisdictions, however, have held that "'there is a difference between an investigating officer giving an opinion as testimony before a jury, and an investigating officer giving an opinion during the interrogation of a suspect.'" *North Carolina v Castaneda*, ___ NC App ___; 715 SE2d 290, 294 (2011), quoting *Odeh v State*, 36 Fla L Weekly D 1510; 82 So 3d 915, 920 (2011). Specifically, some courts hold that because the comments are an interrogation technique and are "not made for the purpose of expressing an opinion as to [the] defendant's credibility or veracity at trial," *Castaneda*, 775 SE2d at 295, the statements are admissible but "only . . . to the extent that they provide context to a relevant answer by the [defendant]." *Id.*, quoting *Idaho v Cordova*, 137 Idaho 635, 641; 51 P3d 449 (2002) (quotation marks omitted). See also, *Maine v*

14

*Mannion*, 637 A2d 452, 456 (Me, 1994) (explaining that such statements "are admissible to prove context if they are relevant . . . and not excludable on the grounds of prejudice, confusion or waste of time"). But see, *Lanham v Commonwealth*, 171 SW3d 14, 27-29 (Ky, 2005) (without engaging in an exacting relevancy analysis, holding that admitting comments accusing a defendant of lying "is necessary to provide a context" for a defendant's answers during an interrogation, but limiting the holding to accusations that a defendant is not telling the truth).

## IV. ANALYSIS

Considering the prohibition on vouching and the prevalence of requests to admit recorded interrogations into evidence to present a defendant's statements to the jury, courts have justifiably struggled with the issue presented in this case. See *Cordova*, 137 Idaho at 640 (noting that courts in other jurisdictions have struggled with this precise issue). Under the facts of this case, however, we find it unnecessary to adopt a bright-line rule for the automatic exclusion of out-of-court statements made in the context of an interrogation that comment on another person's credibility because the issue can be adequately addressed by our existing rules of evidence. Thus, at this juncture, we hold that where the proponent of the evidence offers an interrogator's out-of-court statements that comment on a person's credibility for the purpose of providing context to a defendant's statements, the interrogator's statements are only admissible to the extent that the proponent of the evidence establishes that the interrogator's statements are relevant to their proffered purpose. See MRE 401. Even if relevant, the interrogator's statements may be excluded under MRE 403 and, upon request, must be restricted to their proper

15

scope under MRE 105. Accordingly, to ensure a defendant's right to a fair trial, trial courts "must vigilantly weed out" otherwise inadmissible statements that are not necessary to accomplish their proffered purpose. *People v Crawford*, 458 Mich 376, 388; 582 NW2d 785 (1998). To hold otherwise would allow interrogations laced with otherwise inadmissible content to be presented to the jury disguised as context. See *id*.[10]

## A. OVERVIEW

This Court has long held that even if an out-of-court statement is not offered for the truth of the matter asserted, the statement is not automatically admissible because the "touchstone" of admissibility is "relevance." *Id*. at 388; *People v Wilkins*, 408 Mich 69, 72-73; 288 NW2d 583 (1980); MRE 402.[11] Thus, a mechanical recitation by a party that an interrogator's statements are necessary to provide "context" for a defendant's responses without explaining how the statements relate to the recited purpose is insufficient to present the interrogator's statements to the jury; even if an out-of-court statement is not offered for the truth of the matter asserted, the proponent of the evidence

---

[10] To the extent that the analysis provided in *People v Johnson*, 100 Mich App 594; 300 NW2d 332 (1980), could be viewed as inconsistent with this opinion because it did not address whether the interrogator's statements were relevant for its proffered purpose, it is overruled. As explained within this opinion, even if a statement is not offered for the truth of the matter asserted, it must nevertheless be relevant and otherwise admissible to be presented to the jury.

[11] Under MRE 402:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible.

16

must still establish that it is "relevant" under MRE 401.[12]  *Wilkins*, 408 Mich at 72-73; *Crawford*, 458 Mich at 386 n 6, 387.  See also, *In re Earle*, 355 Mich 596, 602; 95 NW2d 833 (1959) (explaining that if a statement is not offered for the truth of the matter asserted, "[i]t may or may not be received," depending on whether "it has any relevancy in the case; but if it is not received, this is in no way due to the hearsay rule") (citation and quotation marks omitted).

Determining whether a statement is relevant requires a trial court to carefully scrutinize whether the statement is both material—i.e., "offered to help prove a proposition which is . . . a matter in issue"—and probative—i.e., "tends to make the existence of any fact that is of consequence to the determination of the action more probable . . . than it would be without the evidence."  *Crawford*, 458 Mich at 388, 390 (citations and quotation marks omitted).  Under these inquiries, if an interrogator's out-of-court statement is offered to provide context to a defendant's statement that is not "in issue," it follows that both the interrogator's and the defendant's statements are immaterial and, thus, not relevant.  See *id*. at 389.[13]  Likewise, the interrogator's out-of-

---

[12] MRE 401 provides:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

[13] Indeed, it goes without saying that if an interrogator's out-of-court statement provokes a statement by the defendant that is irrelevant or would otherwise be inadmissible at trial, no "context" is necessary: if the defendant's statement is inadmissible, the context surrounding it is likewise inadmissible.

court statements or questions have no probative value if those statements or questions, when considered in relationship to a defendant's statements, do not actually provide context to the defendant's statements. See *id.* at 389-390. Accordingly, an interrogator's out-of-court statements must be redacted if that can be done without harming the probative value of a defendant's statements.[14]

A finding that an interrogator's out-of-court statement has some relevance to its proffered purpose does not necessarily mean that the statement may be presented to the jury, however. See, e.g., *People v Robinson*, 417 Mich 661, 664; 340 NW2d 631 (1983) ("Determination of relevancy . . . does not alone determine admissibility."); MRE 402 ("All relevant evidence is admissible, except as otherwise provided by . . . [the Michigan Rules of Evidence], or other rules adopted by the Supreme Court."). Specifically, under MRE 403, a trial court has a "historic responsibility" to "always determine whether the danger of unfair prejudice to the defendant substantially outweighs the probative value of the evidence sought to be introduced before admitting such evidence." *Robinson*, 417

---

[14] In some circumstances, it might be necessary to consider a specific sequence of questions and answers between an interrogator and a defendant. Portions of an interrogator's statements, when viewed together, *might* be relevant to provide context to a defendant's responses, even though, when viewed in isolation, a single statement of the interrogator, in relation to a single corresponding statement of the defendant, could seemingly be redacted without harming the probative value of a defendant's statement. This may occur in situations where the proponent of the evidence claims that a defendant's story evolved in response to a specific sequence of interrogation. Nevertheless, such a scenario would still be subject to a MRE 403 analysis and MRE 105. Because this scenario is not implicated under the facts of this case, however, we need not address this issue further.

Mich at 665, 666.[15]  See also, *Stachowiak v Subczynski*, 411 Mich 459, 464-465; 307 NW2d 677 (1981).  And "[e]vidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury."  *Crawford*, 458 Mich at 398.  Consistent with these principles, a trial court must therefore evaluate the probative value of the out-of-court statements in providing context to a defendant's statements and the resulting prejudice to a defendant before the interrogator's out-of-court statements are presented to the jury.

In evaluating a statement's probative value against its prejudicial effect, a trial court should be particularly mindful that when a statement is not being offered for the truth of the matter asserted and would otherwise be inadmissible if a witness testified to the same at trial, there is a "danger that the jury might have difficulty limiting its consideration of the material to [its] proper purpose[]."  *Stachowiak*, 411 Mich at 465.  See also, *People v Jenkins*, 450 Mich 249, 260; 537 NW2d 828 (1995).  Indeed, this Court has recognized that child-sexual-abuse cases present "special considerations" given "the reliability problems created by children's suggestibility."  *Peterson*, 450 Mich at 371.  Further, although in the context of trial testimony, this Court has condemned opinions related to the truthfulness of alleged child-sexual-abuse complainants even when the opinions are not directed at a specific complainant.  This is because in cases hinging

---

[15] MRE 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

19

on credibility assessments, the risk goes beyond any direct reference to a specific complainant given that the jury is often "looking to 'hang its hat' on the testimony of witnesses it views as impartial." *Id*. at 376. Likewise, an out-of-court statement made by an investigating officer "may be given undue weight by the jury" where the determination of a defendant's guilt or innocence hinges on who the jury determines is more credible—the complainant or the defendant. *People v Prophet*, 101 Mich App 618, 624; 300 NW2d 652 (1980). Thus, even if an interrogator's statements are not offered for the truth of the matter asserted, courts must be mindful of the problems inherent in presenting the statements to the jury, especially in child-sexual-abuse cases. See *Peterson*, 450 Mich at 371.

Finally, if an interrogator's out-of-court statement is determined to be admissible for the purpose of providing context for a defendant's statements, this determination "does not mean that the judicial duty in admitting [the interrogator's statement] is circumscribed by [that] conclusion." *Wilkins*, 408 Mich at 73. Instead, under MRE 105,[16] if evidence is admissible for one purpose, but not admissible for another purpose, the court, upon request, "*shall restrict the evidence to its proper scope . . . .*" (Emphasis added.) Thus, because an interrogator's comments regarding a person's credibility are not admissible for the truth of the matter asserted, a trial court shall restrict the

---

[16] MRE 105 provides in full:

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

interrogator's statements to their proper scope—to actually provide context to a defendant's statement.

Limiting out-of-court statements that are not offered for the truth of the matter asserted to their proper scope is not a new concept in Michigan jurisprudence. Indeed, this Court has previously rejected the notion that a rote recitation that a statement is not offered for the truth of the matter asserted is sufficient to admit an out-of-court statement. For example, in *Wilkins*, a police officer was allowed to testify to the contents of an informant's tip on the basis that the testimony was merely providing a basis for the officer's subsequent action. This Court held that even if the testimony was relevant for a purpose other than the truth of the matter asserted, under MRE 105, the officer's testimony should have been restricted to simply provide that the police officer was responding to "a tip," which was sufficient to establish the reason the officer took subsequent action. *Wilkins*, 408 Mich at 73.

Likewise, in the context of police interrogations, requiring the interrogating officer to testify at trial and paraphrase the statements he or she made that provoked a relevant statement by a defendant may be necessary in some instances to protect a defendant's right to a fair trial from the resulting prejudice of allowing the jury to hear the interrogator's comments verbatim.

## B. APPLICATION

Applying these principles to this case, we hold that the trial court abused its discretion by admitting all the detectives' statements to the jury. As it pertains to Detective Kolakowski's first statement—that "[k]ids have a hard time lying about this

21

stuff . . . ."[17]—the statement was irrelevant to providing context to defendant's statements because, quite simply, there was no statement from defendant for which the detective's statement provided context. Instead, Detective Kolakowski's statements only provided context to the response of Detective Heffron. Accordingly, Detective Kolakowski's statement had no probative value for its proffered purpose.

Regarding the second set of statements by Detective Heffron, we hold that the majority of the statements were not probative to actually provide context to defendant's statements because the majority of the detective's comments could be redacted without harming the probative value of defendant's responsive statement. Indeed, when viewed in context, only Detective Heffron's final statement to defendant was actually probative of the matter, and, thus, the previous statements should have been redacted as irrelevant.[18] As to Detective Heffron's remaining statement, the statement's probative

---

[17] Detective Kolakowski stated, "Kids have a hard time lying about this stuff because they don't even want to talk about it, let alone they don't even want to talk about it to a mere fucking stranger."

[18] Specifically, only the following italicized portion of Detective Heffron's statement would have been probative to provide context to defendant's statement:

> DETECTIVE HEFFRON: ~~You know there's a big difference when we interview 4, 5, 6 year olds and when they get up around 10, 11, 12, 13. There's a big difference. Four, five, six year old kids, they're easy to manipulate by parents, aunts, uncles—they're easy to manipulate. They're terrible actors. They're terrible. When kids start getting a little bit older they're better actors. They're—they're older, they're seeing more. She's 12. The big issue here is if she wanted to get you in trouble—she's smart enough, and she's only—and she's 12—~~ *if, for whatever reason, she wanted to get you in trouble she would—she would—*
>
> [DEFENDANT]: That she would say that I fucked her?

22

value was not substantially outweighed by the danger of unfair prejudice to defendant, given the relatively innocuous nature of the detective's statement.

As to the final exchange, we again hold that the trial court abused its discretion by admitting the entirety of Detective Heffron's statements. With the exception of Detective Heffron's final questions and comments, the lengthy narrative of Detective Heffron consisted of statements directed at defendant that were unconnected to any question and could have been easily redacted without harming the probative value of defendant's statement.[19]    As to Detective Heffron's remaining comments and

---

[19] When viewed in context, only the following, italicized portion of Detective Heffron's statements would have been probative to provide context to defendant's statement in response:

> DETECTIVE HEFFRON: ~~Absolutely. "He put his hand down my pants, his finger was in my vagina" all of this "his mouth was on my breast" that's what they would do if they're gonna lie to get somebody in trouble, . . . an older kid like that. Little kids, they never've [sic] been exposed to that stuff. They don't know. But it's pretty credible when she tells us, "Hey, he touched . . . me here" and "he put his hand on my breasts" and . . . "his hand started going down my pants but he couldn't." That's pretty credible; that's pretty detailed. Again, if there's no reason for her to make this crap up, why would she say it? This is the last thing . . . she wanted to do was talk to a total stranger about something like this. Why? Why is she gonna put herself through that if it didn't happen? We can't find anything. Kids don't lie about this stuff. [T]hey lie about their homework being done; they lie about, "yep, I did the dishes" when they didn't . . . [T]hey lie about "yeah, we were in bed by 10:00." They don't lie about this stuff if maybe she's in trouble for something. This is not the kind of stuff that kids make up to try to get out of some trouble that they're in. That's why this is so disturbing. . . . And again, if she's talking about "his hand was on my breast," she's not gonna make that crap up. She just isn't. And this is your opportunity for her to eventually see that you made a mistake, you're human, and you want to get this worked out so she has the least amount of stress/trauma, whatever, but that she gets the . . . feeling that "I love the man, the family. He made a mistake and someday as I'm~~

questions,[20] we again hold that the statements' probative value was not substantially outweighed by the danger of unfair prejudice to defendant, given the nature of the questions asked.

Finally, even if there was some probative value to the statements that the trial court erroneously failed to redact, the minimal probative value of those statements would be substantially outweighed by the danger of unfair prejudice to defendant under the facts of this case. See MRE 403. This Court has stated that "courts should be particularly insistent in protecting innocent defendants in child sexual abuse cases" given "the

older because she's always gonna remember this this didn't happen when she was 2 or 3 years old they don't remember that stuff. She's always gonna remember this. At some point she will be able to accept, "Hey, this is what happened. We all make mistakes. He made a mistake." But you're gonna have to start by being upfront. And for you to sit here and say that "well, yep, she's telling the truth about this, but she's lying about that," . . . she's gonna have this report. She's gonna know exactly what you said, and whatever . . . message you want to send her that's . . . up to you. We can't force you. *But if she's saying you touched her breasts—* I wasn't there for the interview [of the complainant] but [Kolakowski, who has] done a lot of interviewing, said, "Bill, there's no question this happened and the stuff that I'm aware of he probably did"—*we just need to know why. Was it alcohol? Was it—I don't know what your sex life has been at home, but all we want to know is why. Were you ever molested as a child?*

[DEFENDANT]: No.

DETECTIVE HEFFRON: Help us out here.

[DEFENDANT]: You asked a lot of different questions right there. I don't know—I—I don't know what motivated me. I think I explained it, I was just trying to give her a peck. I don't know where this touching of the breast is coming from. [Emphasis added.]

[20] See footnote 19.

24

concerns of suggestibility and the prejudicial effect an expert's testimony may have on a jury." *Peterson*, 450 Mich at 371. As applied to this case, although Detective Kolakowski was not qualified as an expert, Detective Kolakowski's specialized training and experience with child complainants was presented to the jury immediately before the jury viewed the recording of the interrogation. Thus, not only was the jury aware that Detective Kolakowski had performed "hundreds" of forensic interviews involving alleged child-sexual-assault victims, but Detective Kolakowski also informed the jury that a child of the same age as the complainant understands "the difference between the truth and a lie." Accordingly, Detective Kolakowski's trial testimony regarding his training and experience "gave [Detective Kolakowski] the same aura of superior knowledge that accompanies expert witnesses in other trials." *Cordova*, 137 Idaho at 641.[21] Further, the undue weight that jurors may be inclined to place on police officers' statements heightened the prejudicial effect of the detectives' frequent out-of-court statements regarding the credibility of child complainants generally and the veracity of the complainant, thus offering the jury the "much sought-after hook on which to hang its hat." *Peterson*, 450 Mich at 374 (citation and quotation marks omitted). Accordingly, even if the out-of-court statements that were not redacted had some probative value for their proffered purpose, the probative value was substantially outweighed by the danger of unfair prejudice to defendant.

---

[21] Indeed, Detective Heffron's out-of-court statements regarding Detective Kolakowski's expertise bolstered Detective Kolakowski's status as an expert, both within the context of the interrogation and his testimony at trial.

Our conclusion that the trial court abused its discretion does not end the inquiry, however, because nonconstitutional, preserved evidentiary errors are not grounds for reversal unless they undermined the reliability of the verdict. *Krueger*, 466 Mich at 54. In this case, we conclude that they did.

The evidence offered against defendant was not overwhelming. Although the complainant's testimony did not need to be corroborated, MCL 750.520h, there were no third-party witnesses in this case. Further, the prosecution relied on testimonial evidence and defendant's statements during the interrogation, and a factual dispute existed between the complainant's testimony and defendant's version of the events: defendant did not deny touching the complainant, but denied touching the complainant in the manner that was alleged and denied that his conduct was for sexual gratification. Thus, under the facts of this case, assessing witness credibility was the pervasive issue for the jury. As a result, the jury may have looked to the detectives' repeated out-of-court statements regarding the complainant's credibility, given the lack of physical evidence against defendant and the aura of expertise surrounding Detective Kolakowski.

Further, the trial court's belated limiting instruction did not cure the error. In *Jenkins*, this Court recognized that "'despite proper instructions to the jury, it is often difficult for them to distinguish between . . . substantive evidence'" and evidence that is offered for another purpose. *Jenkins*, 450 Mich at 261-262, quoting *United States v Morlang*, 531 F2d 183, 190 (CA 4, 1975). In *Jenkins*, the prosecution was allowed to improperly impeach a witness with a prior inconsistent statement by having an officer who took the statement read the entirety of the written memorandum of the witness's prior statement to the jury. Portions of the memorandum, however, contained prejudicial

26

statements that were unnecessary for impeachment purposes. *Id*. at 260-262. Given the improper manner in which the prior statements were presented to the jury and the fact that the officer's testimony went beyond the proper scope of impeachment, *Jenkins* held that there was a risk that the jury accepted the contents of the memorandum as substantive evidence, and this risk was heightened by the trial court's failure to provide a limiting instruction at the time the improperly admitted statement was read to the jury. *Id.* at 260, 263.

In this case, the belated curative instruction likewise does not alter our conclusion that the errors undermined the reliability of the verdict. Indeed, before the recording was presented to the jury, the jury was expressly instructed that "the recording that's going to be played for you [is] the evidence" and that the jury would "have to make [its] decision" on the basis of the evidence that was admitted. It was not until after the recording was played and after an hour-long recess that the trial court instructed the jury that the detectives' statements in the recording could only be considered to provide context for defendant's statements. Thus, the jury viewed the recording with the unqualified instruction in mind that the recording was evidence only to later be informed that all of the recording's contents could not be considered as such. Cf. *People v Clark*, 340 Mich 411, 418; 65 NW2d 717 (1954) (stating that when conflicting instructions are given, a court presumes that the jury followed the erroneous instruction). Similar to *Jenkins*, the risk that the jury accepted the contents of the recording as substantive evidence was heightened by the lack of a limiting instruction before the improperly admitted statements were presented to the jury. Accordingly, although an appropriate limiting instruction

27

may reduce prejudice to a defendant, the lack of a timely limiting instruction in this case reinforces our conclusion that an error-requiring reversal occurred.

## V.  CONCLUSION

We hold that under the facts of this case, the trial court abused its discretion by failing to redact the majority of the detectives' out-of-court statements commenting on credibility from the recording that was played to the jury because they were irrelevant to their offered purpose of actually providing context to defendant's statements.  Moreover, we hold that the errors undermined the reliability of the verdict.  Accordingly, we reverse the judgment of the Court of Appeals, vacate defendant's convictions under MCL 750.520c(1)(a) and MCL 750.81, and remand the case to the trial court for further proceedings consistent with this opinion.

Michael F. Cavanagh
Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano