*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STEPHEN ALBERT CHESLA,

        Defendant-Appellant.

UNPUBLISHED
July 27, 2023

No. 358552
Ottawa Circuit Court
LC No. 20-043846-FC

Before: SHAPIRO, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of first-degree criminal sexual conduct, MCL 750.520b(2)(b), and second-degree criminal sexual conduct, MCL 750.520c(2)(b), with respect to a minor under the age of 13. Defendant appeals by right, arguing that he was denied effective assistance of counsel. For the reasons set forth in this opinion, we reverse and remand for a new trial.

## I. BACKGROUND

The complainant, KK, is defendant's stepgranddaughter. At the time of trial, KK was almost 15 years old. KK testified that she slept over at her grandmother and defendant's home two to four times per month. When KK slept over, she would stay in her grandmother's room alone, across from defendant's room. KK testified that she had a good relationship with her grandmother, but she did not have a good relationship with defendant because he made her uncomfortable. According to KK, one night defendant entered her bedroom wearing only his underwear, and she pretended to be asleep. KK further testified that defendant pulled down her pants and underwear to her ankles and then touched the outside of her vagina and digitally penetrated her over a half-hour period. KK said that this occurred "[n]ot a ton, but more than once" about four or five years ago. KK testified that she did not report defendant to her parents because she was afraid and she knew that defendant had many loaded firearms in his home. KK disclosed the incidents to her stepmother when they were watching a movie at home in February 2020. The stepmother called KK's father, and the three of them reported the alleged incidents to the Children's Advocacy Center.

KK's stepmother and father testified at trial, and the prosecution also called Olga Mathis, a forensic interview manager at the Children's Advocacy Center who performed the forensic interview of KK. The prosecution also called Barbara Welke, the former director of the Children's Advocacy Center, who testified about why a child may delay disclosure of sexual abuse.

The prosecution also called defendant's wife, who testified defendant admitted to her that one night he went into the bedroom where KK slept and started to pull KK's pajamas down to her thighs before stopping himself and pulling the pajamas back up. The prosecution corroborated this testimony by playing a recording of defendant's police interview for the jury. Each juror was provided a transcript of the interview to follow along with as the interviewed played.

In the interview, defendant admitted that he went into KK's bedroom and started to pull down her pajamas but stopped himself before he exposed her pubic bone. The jury also heard Detective Bridget Schickinger tell defendant during the interview that children KK's age do not lie about sexual assault and that the detectives knew that KK was not lying. Further, there were repeated references by Detective Adam Hill to defendant's past pornography addiction. Hill attempted to attribute defendant's actions to "porn Steve," a tactic to differentiate the current defendant from the "past" defendant who committed the alleged sexual abuse.

Defense counsel called KK's cousin, KL, who also regularly spent time at her grandmother and defendant's home. KL testified that KK pressured her to lie and say she had also been sexually assaulted by defendant. KL did make such allegations about defendant but later recanted, claiming that she lied and that in fact no assaults had occurred. On cross-examination, KL agreed that KK told her in text messages to just be honest regarding defendant.

After the trial, defendant moved for a new trial and requested a *Ginther*[1] hearing. The trial court granted the request for a *Ginther* hearing and at the hearing defense counsel testified about his trial strategy. When asked why he did not request that the police interview be redacted, defense counsel answered that he did not believe he could challenge the interview's admission because defendant's statements to the police were voluntarily given, which is incorrect. The trial court denied defendant's motion for a new trial, determining that defendant was not denied the effective assistance of counsel.

## II. DISCUSSION

On appeal, defendant presents various claims of ineffective assistance of counsel. He first argues that defense counsel was ineffective for failing to file a motion in limine to redact portions of defendant's police interview containing statements by Detective Schickinger that children cannot lie about sexual assault. We agree. Accordingly, we reverse and remand for a new trial. [2]

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010) (quotation marks and citation omitted).

Both the United States and Michigan constitutions guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To obtain a new trial on the basis of ineffective assistance of counsel, a defendant must establish that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

"Generally, all relevant evidence is admissible at trial." *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001). See also MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Even if relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

Defendant relies on *People v Musser*, 494 Mich 337; 835 NW2d 319 (2013), for the contention that the detective improperly bolstered KK's testimony when the detective stated in the police interview that children KK's age do not lie and that KK was not lying. In *Musser*, the defendant was charged with second-degree criminal sexual conduct against an 11-year-old girl. *Id*. at 339. The video interrogation of defendant was played at trial, and the jury heard the detective's statements to the defendant that "[k]ids have a hard time lying about this stuff" as well as statements indicating that the complainant was not lying. *Id*. at 343-345. The trial court denied the defendant's request to redact portions of the defendant's interview in which the detective commented on the complainant's credibility, we affirmed, and the Supreme Court granted leave to appeal. *Id*. at 347-348.

The Supreme Court began with the well-settled proposition that a witness's opinion of another witness's credibility has no probative value "because they do nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence." *Id*. at 349 (quotation marks and citation omitted). Significantly, the Court "condemned opinions related to the truthfulness of alleged child-sexual-abuse complainants even when the opinions are not directed at a specific complainant." *Id*. at 357. "This is because in cases hinging on credibility assessments, the risk goes beyond any direct reference to a specific complainant given that the jury is often 'looking to "hang its hat" on the testimony of witnesses it views as impartial.' " *Id*. at 357-358, quoting *People v Peterson*, 450 Mich 349, 376; 537 NW2d 857 (1995). The specific question in *Musser* was "whether the rule barring testimony regarding the credibility of another person excludes out-of-court statements to the same effect that are contained in the recordings or transcripts of an interrogation." *Musser*, 494 Mich at 349. The Court declined to adopt a bright-line rule because the existing rules of evidence were enough to resolve this issue. *Id*. at 353. When the prosecution claims that improper bolstering statements by the police are necessary to provide context to the defendant's statements, "the interrogator's statements are only admissible to the extent that the proponent of the evidence establishes that the interrogator's statements are relevant to their proffered purpose." *Id*. at 354, citing MRE 401. Even if relevant, the statements may be excluded under MRE 403, which in this context requires a trial court to "evaluate the probative value of the out-of-court statements in providing context to a defendant's statements and the resulting prejudice to a defendant before the interrogator's out-of-court statements are presented to the jury." *Id*. at 357.

Applying these principles, the *Musser* Court held that the trial court abused its discretion when it denied the defendant's request to redact the detectives' statements commenting on the complainant's credibility. *Id*. at 359. The Court determined that the statements had minimal probative value and were substantially outweighed by the danger of unfair prejudice to the defendant because the detectives' statements about "the credibility of child complainants generally and the veracity of the complainant" offered the jury the " 'much sought-after hook on which to hang its hat' " in making its credibility assessment. *Id*. at 362-363, quoting *Peterson*, 450 Mich at 374. The Court further held that this error undermined the reliability of the verdict when the "evidence offered against defendant was not overwhelming," i.e., there was no physical evidence or third-party witnesses. *Musser*, 494 Mich at 363-364.

In this case, an unredacted recording of defendant's police interview was played for the jury with no objection by defense counsel. During the police interview, defendant stated that one time he went into KK's bedroom and "pulled her pajamas down not even far enough to expose anything, not even touching her body whatsoever, and then thought, you f****** idiot, what are you doing, and then I pulled them back up, and that was it." The interviewing detectives insisted that there was more to the story, which defendant denied. Eventually, Detective Bridget Schickinger told defendant that young children cannot lie about these types of incidents and so the police knew that KK was not lying:

> Steve, here's the thing, we've been doing this for a long time and we investigate a lot of cases where stuff like this happens, and it happens a lot with [inaudible], okay? . . . .

> * * *

> [W]hen we interview young children like this, there is no part of their brain that's developed that they're going to lie about something this big, and we don't think [KK] is lying about—we know that she's not lying about any of this, and we know that it happened.

When defendant asked the detective if KK was saying that there were "multiple times," Schickinger replied, "Multiple times she is saying. And she's not lying about that." Later, Schickinger stated that "[w]e have no reason to believe [KK] is lying about this."

These statements are plainly prohibited by *Musser* and should not have been presented to the jury. As in *Musser*, Detective Schickinger made statements that children do not lie about sexual assault generally and that the complainant in this case was not lying. These statements amounted to an improper bolstering of KK's credibility, and the prosecution does not contend that the statements were relevant for another purpose, e.g., providing context to defendant's statements. Accordingly, the statements were not relevant under MRE 401 or admissible under MRE 403, and defense counsel's failure to request their redaction from the interview fell below an objective standard of reasonableness.

The trial court determined that defendant had not shown a reasonable probability of a different result had the interview been redacted. The trial court reasoned that unlike *Musser*, there was other evidence in this case for the jury to evaluate the complainant's credibility, specifically

defendant's apology to his wife[3] and his admission that he lowered the child's pajamas midway down her thigh before he stopped himself. However, defendant did not admit to any sexual contact and as in *Musser*, there was no physical evidence or third-party witness to the alleged assaults.[4] Further, the other evidence referenced by the trial court is equally consistent with both defendant's and KK's versions of events. And, if believed, KL's testimony that KK pressured her into making false allegations against defendant undermined KK's credibility.

The trial court distinguished *Musser* on the basis that the detective in that case had testified regarding his training and experience with forensic interviews, thus giving him the "same aura of superior knowledge that accompanies expert witnesses in other trials." *Id*. at 363 (quotation marks and citation omitted). The trial court reasoned that there was no such testimony with respect to Detective Schickinger in this case. Nonetheless, the jury heard Schickinger's statement during the interview that "we've been doing this for a long time and we investigate a lot of cases where stuff like this happens" immediately before her statements that children are unable to lie about sexual assault and that KK was not lying. Further, *Musser* recognized that "an out-of-court statement made by an investigating officer may be given undue weight by the jury where the determination of a defendant's guilt or innocence hinges on who the jury determines is more credible—the complainant or the defendant." *Id*. at 358 (quotation marks and citation omitted). Accordingly, even in the absence of testimony about her training, there is a risk that the jury looked at Schickinger's statements as the "much sought-after hook on which to hang its hat." *Id*. at 363 (quotation marks and citation omitted).

In sum, defense counsel's failure to move to redact the police interview was not objectively reasonable. Under *Musser*, the detective's statements that vouched for the child complainant's credibility were inadmissible. Given that this case hinged on a credibility assessment, these statements were highly prejudicial to the defense. For these reasons, we conclude that, but for

---

[3] Defendant's wife testified that after defendant admitted pulling down KK's pants, he sent her a message apologizing for his actions.

[4] In *Musser*, the defendant testified he never sexually assaulted the child, and, at most, innocently kissed her and accidentally touched her back. *Musser*, 494 Mich at 342, 364. In this case, defendant, wearing only his underwear, entered the bedroom where his young step-granddaughter was sleeping alone late one night and pulled down her pajama bottoms and underwear. Although defendant told the police he never exposed KK's pubic bone, he told his wife and her friend these items were pulled down to the girl's mid-thigh. Defendant arguably attempted to commit criminal sexual conduct, MCL 750.92 and MCL 750.520b or MCL 750.520c, an assault or attempted assault with the intent to commit criminal sexual conduct, MCL 750.92 and MCL 750.520g, or, at the very least, an assault, MCL 750.81(1). Nevertheless, if defendant's claim that he stopped himself before any sexual contact or penetration occurred was believed, it might constitute abandonment to an attempted crime and support his position that he was not guilty of the charged crimes. See and compare *People v McNeal*, 152 Mich App 404, 414-417; 393 NW2d 907 (1986), overruled in part on other grounds *People v Jaffray*, 445 Mich 287, 308, 312; 519 NW2d 108 (1994).

defense counsel's deficient performance with respect to the police interview, there is a reasonable probability that the outcome at trial would have been different.[5]

Reversed and remanded for a new trial. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Anica Letica
/s/ Kathleen A. Feeney

---

[5] Given this conclusion, we decline to address defendant's other claims of ineffective assistance of counsel, including that defense counsel was ineffective for not objecting to the testimony of Mathis and Welke explaining the purpose and process of a forensic interview, for failing to seek redaction of the detectives' repeated references to defendant's past pornography addiction and "porn Steve," during the police interview, and for failing to call an expert regarding pornography addiction.