*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
November 14, 2019

v

No. 343986
Ingham Circuit Court
LC No. 17-000238-FH

ARIQUE DANTE ARDISTER,

Defendant-Appellant.

Before: O'BRIEN, P.J., and GADOLA and REDFORD, JJ.

PER CURIAM.

Defendant was convicted by a jury of four counts of third-degree criminal sexual conduct, MCL 750.520d(1)(a) (sexual penetration with a person at least 13 and under 16 years of age). The trial court sentenced defendant to serve four to 15 years' imprisonment. Defendant appeals as of right. We affirm.

## I. FACTS

In the fall of 2015, the then 14-year-old victim met defendant, who was a friend of her older sister. The victim began socializing regularly with defendant and her sister's other friends. The victim's mother testified that thereafter she noticed that the victim's behavior changed; the victim stopped getting good grades at school, stopped socializing with her usual school friends, began to socialize exclusively with her older sister's friends including defendant, and began to do her own laundry. When the mother questioned the victim about wearing a different type of underwear than usual, the victim replied merely that she was growing up.

In April 2016, the victim's mother learned that while she had been out of town, defendant and the victim had been stopped by police while driving together at 3:00 in the morning. When the mother questioned her about whether she was having a sexual relationship with defendant, the victim denied it. The victim's mother also confronted defendant about whether he and the victim were engaged in a sexual relationship, which defendant denied.

In October 2016, the victim's mother found notecards in the victim's room, written by the victim, in which the victim expressed that she loved some person, was sad because their sexual

-1-

relationship had ended, and was hurt because the person had a new girlfriend. Upon reading the notecards, the victim's mother demanded to look at the victim's cell phone where she discovered sexually suggestive text messages between the victim and defendant. The victim then admitted to her mother that she had been having a sexual relationship with defendant. When the victim's mother again confronted defendant about the relationship, he sent her a message denying the relationship, but also saying that it was nothing to be concerned about because the victim was unhurt and was not pregnant.

Defendant was charged with third-degree criminal sexual conduct, MCL 750.520d(1)(a). At trial, when the victim's mother testified that she learned about the relationship after discovering the notecards, the prosecutor asked her to read the notecards to the jury. The trial court asked defense counsel if he objected, and defense counsel stated "No, I've seen them. No objection, your Honor."

Thereafter, the victim testified that she first had sex with defendant in January 2016 when she was 15 and defendant was 22 years old. The victim further testified that from that time until October 2016, she and defendant had sexual intercourse every weekend. She also testified that she had written the notecards because she was upset and was attempting to process her feelings. At the conclusion of trial, the jury found defendant guilty of four counts of third-degree criminal sexual conduct. Defendant now appeals, challenging the effectiveness of his counsel at trial.

## II. DISCUSSION

Defendant contends that he was denied the effective assistance of counsel at trial because his counsel did not seek to exclude from evidence the victim's statements as recorded in the notecards. Defendant argues that the victim's statements in the notecards were inadmissible hearsay because the sole purpose of the admission of the statements was to bolster the victim's credibility and corroborate the complainant's testimony. We disagree that defense counsel at trial was ineffective.

The right to counsel is guaranteed by both the United States and Michigan Constitutions, US Const, Am VI; Const 1963, art 1, §20, and includes the right to the effective assistance of counsel. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). To preserve a claim of ineffective assistance of counsel a defendant is required to move for a new trial or for an evidentiary hearing before the trial court. *People v Head*, 323 Mich App 526, 538-539; 917 NW2d 752 (2018). Where, as here, the defendant fails timely to raise ineffective assistance of counsel before the trial court, the issue is unpreserved and our review of the issue is limited to error apparent on the record. See *Id*. at 539.

Whether a defendant was deprived of effective assistance of counsel is a mixed question of fact and law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review the trial court's factual findings for clear error, and review questions of law de novo. *Head*, 323 Mich at 539. Whether counsel was effective is an objective standard that requires us to determine whether the acts or omissions by counsel in question were outside the wide range of professionally competent assistance. *Vaughn*, 491 Mich at 669. To establish a claim of ineffective assistance of counsel, the defendant must demonstrate "(1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant."

*People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). Prejudice in this context means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*., quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). This Court presumes that defense counsel provided effective assistance, and the burden upon the defendant to prove that counsel was ineffective is a heavy one. *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016).

When a defendant claims ineffective assistance of counsel, he or she also has the burden of establishing the factual predicate of the claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). Here, defendant's underlying assertion is that defense counsel at trial was ineffective because he failed to object to the admission into evidence of the victim's statements in the notecards, which defendant contends was inadmissible hearsay.

Hearsay is defined by MRE 801(c) as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Generally, hearsay is inadmissible. MRE 802; *People v Shaw*, 315 Mich App 668, 673; 892 NW2d 15 (2016). However, if evidence is offered for a purpose other than to prove the truth of the matter asserted, then it is not hearsay by definition. *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013). For example, when a statement is offered to explain why certain action was taken, it is not hearsay. *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007). Thus, an out-of-court statement may be admitted to show the effect of the statement on the hearer or the reader, if that effect is relevant. *People v Ortiz*, 249 Mich App 297, 309; 642 NW2d 417 (2002).

Here, the victim's statements in the notecards were not introduced to prove the truth of the matter asserted in the statements, which was that she had been in a sexual relationship with someone and was sad that the relationship had ended. Rather, the statements were offered during the victim's mother's testimony to demonstrate that the statements had the effect of causing the mother to confront first the victim and then defendant with her suspicions of a sexual relationship between the victim and defendant. Because the statements were not offered to prove the truth of the matter asserted in the statements, they were not hearsay and were not subject to objection on that ground. See *Musser*, 494 Mich at 350. Counsel was not ineffective for failing to raise a meritless or futile objection. *People v Putnam*, 309 Mich App 240, 245; 870 NW2d 593 (2015).

In addition, counsel's decision not to challenge the admissibility of the statements in the notecards appears to have been part of his defense strategy. Generally, decisions regarding whether to raise objections are presumed to be matters of trial strategy, and declining to object to evidence often is consistent with sound trial strategy. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). Failure to object to inadmissible hearsay evidence is objectively unreasonable when defense counsel has no basis to reasonably conclude that allowing the inadmissible hearsay testimony would create a tactical advantage for the defense. *Shaw*, 315 Mich App at 676-677. But defense counsel may choose not to object to the admission of evidence for strategic reasons, and if the strategy is reasonable, then counsel's performance in that regard is not deficient. *Randolph*, 502 Mich at 12.

In this case, our review of the record reveals that defense counsel's theory of the case was that defendant had been falsely accused by the victim, who was infatuated with defendant and longed to be romantically involved with her older sister's friend. During his opening statement at trial, defense counsel referenced the notecards, and explained to the jury that the notecards demonstrated that the victim was in love with the defendant and was upset that her feelings were not reciprocated, and perhaps wished for others to believe that she was in a relationship with defendant. Defense counsel stated, in relevant part:

> There's two sides to every story, and this one you can figure out. This case is really about three note cards. This young lady – well, you wouldn't really call it a letter and you wouldn't really call it a diary entry, but she wrote on three notecards her feelings for Arique Ardister. Now, this isn't -- this isn't a young gal that just had casual contact with Mr. Ardister. Her sister lived with Mr. Ardister for quite a while. They were all –all friends. And, this young lady's mother used to let her go, pretty much, wherever she wanted to go whenever she wanted to go.
>
> So, like most teenage girls if she can get out of the house and go someplace else well that's what she was going to do and that's what she did. She followed her sister, Kelsie. Now, all of the things that the Prosecutor told you happened were supposed to have happened at times when they were in about an 800 square foot house with a whole bunch of people. It never happened. [The victim] wrote something on a card, and you'll see it.
>
> I'm not going to tell you what the evidence is, you guys can hear it – that said that she made love to Arique. That was how she felt. She also wrote on that card that she was upset because Arique had a girlfriend and Arique wasn't paying as much attention to her. You're going to find out that Arique was this little girl's fallback, just like the rest of [the] folks that hung out in that group. That this little girl, this is who she relied on. She relied on these people.
>
> * * *
>
> And, it couldn't have happened. Based on that alone I think you'll get a really good flavor of what this is. This little girl was in love with this character over here. She thought he was one of the greatest roller skaters that ever lived. And he paid attention to her when nobody else would, and he talked to her just like the rest of the kids did. And, she fell in love with him. I don't think there's any question about that. And she wrote these three notecards at some point, and for some reason she stuck them … in the mirror in her bedroom. I don't know why she did that. I think maybe you'll be able to figure it out. Maybe she wanted her mother to find them. I don't know, maybe she wanted some attention. Who knows? I have no idea what teenage girls [do]. I had enough trouble with my own. But, one thing is true, that's what she wanted to happen. That's not what happened.

Again during closing argument, defense counsel argued that the victim was young, emotional, and infatuated with the defendant, as illustrated by the notecards, and that the victim therefore fabricated the relationship.

This Court will not second-guess trial counsel in matters of trial strategy, nor do we assess counsel's performance with the benefit of hindsight. *People v Foster*, 319 Mich App 365, 391; 901 NW2d 127 (2017). In addition, simply because defense counsel's chosen strategy is unsuccessful does not render his or her performance constitutionally defective. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2002). Here, the record as a whole demonstrates that counsel used the statements in the notecards to show that the victim was infatuated with defendant, consistent with the defense's theory of the case, and defendant has failed to overcome the strong presumption that his trial counsel's performance was sound.

In addition, a defendant claiming ineffective assistance of counsel must establish that there is a reasonable probability that, but for counsel's alleged error, the outcome of the proceedings would have been different. *People v Jackson*, 313 Mich App 409, 431; 884 NW2d 297 (2015). Here, the evidence against defendant was substantial. The victim testified with specificity regarding the times, places, and details of her relationship with defendant. She testified that she and defendant had sex when she was 15 years old and he was 22 years old, and that they had sexual intercourse every weekend from January 2016 until October 2016. This testimony is consistent with that of the victim's sister and mother that the victim spent weekends in defendant's company, often staying overnight at defendant's house, during that time period. The victim's mother also testified that the victim's behavior changed in ways that prompted her to suspect a relationship between the victim and defendant. The victim's testimony also was corroborated by defendant's sexually suggestive messages with the victim and his message to the victim's mother denying the relationship, but suggesting that if it had occurred it was not concerning because the victim was unhurt and not pregnant. In light of the other evidence of defendant's guilt, defendant cannot establish that the result of the proceedings would have been different had counsel successfully objected to the admission of the statements in the notecards.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Michael F. Gadola
/s/ James Robert Redford

-5-