*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAY A. YENSEN,

Defendant-Appellant.

UNPUBLISHED
March 25, 2021

No. 350176
Eaton Circuit Court
LC No. 2018-020111-FC

Before: M. J. KELLY, P.J., and RONAYNE KRAUSE and REDFORD, JJ.

REDFORD, J. (*concurring in part and dissenting in part*).

I concur in part but respectfully dissent from the majority opinion and would affirm defendant's convictions. I concur with the majority's decision and reasoning regarding the admission under MCL 768.27a of the testimony by NC and TR respecting defendant's commission of uncharged sexual acts against them when they were both minors. I disagree, however, with the majority's decision to reverse defendant's convictions because of the prosecution's experts' testimonies for the reason that defendant has failed to carry his burden to establish that the trial court committed plain error that affected his substantial rights.

## I. STANDARD OF REVIEW

Because defendant never objected to the testimonies of the prosecution's expert witnesses and concedes that he failed to preserve the issues for appeal, he bears the burden of establishing that the trial court committed plain error that affected the outcome of the proceedings. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Our Supreme Court has directed that reversal is unwarranted unless the plain, forfeited error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence. *Id*. at 764. Defendant has failed to establish such grounds for reversal. Defendant also did not assert in the trial court that his counsel provided him ineffective assistance. His failure to do so limits this Court's review to errors apparent in the record which he has also failed to establish. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

## II. THE OVERALL BACKGROUND OF THE CASE

Defendant appeals his convictions of multiple counts of sexual abuse of the minor children of his former live-in girlfriend. Specifically, the jury convicted defendant of three counts of CSC-I against VS involving two counts of penile to anal penetration and one count of oral to genital penetration; one count of CSC-I against DW involving penile to oral penetration; two counts of CSC-II against VS including a sexual touching on a couch at a residence in which defendant lived with the victims; and a final count of sexual touching of VS in a shower at the same residence. All of these acts were specifically and in detail testified about by VS and DW.

Additionally, as authorized by MCL 768.27a, the jury received testimony from NC and TR that they had been sexually assaulted by defendant ten years and four years respectively before defendant first assaulted VS. Like VS and DW, defendant, because of relationships, was able to have close unsupervised access to NC and TR when the assaults they testified about took place.

As indicated by the majority, defendant was convicted of all counts against VS and DW and received sentences of not less than 40 years nor more than 60 years for each count of CSC-I, and not less than 10 nor more than 15 years on each count of CSC-II.

Before imposing the above-guidelines and above-statutory-minimum sentences, the trial court had the benefit of presiding over both defendant's first trial—which ended in a mistrial—and the trial giving rise to the instant appeal, as well as a compelling victim impact statement by VS and DW's mother. In fulfilling its duties, the court considered four principles: reformation, protecting society, disciplining the wrongdoer, and deterrence.

The court's statements at sentencing included:

> I've listened to two trials and when you look at these acts that have occurred and the things that the Defendant has done over such a long span of time, it just, in my opinion, I just don't think that the Defendant can be rehabilitated. So, there's nothing for me to try to order for the Defendant that would accomplish that.
>
> The other thing that the Court has to do is to protect society. One of the main responsibilities of the sentencing Judge is to make sure our society protected. Sometimes, that may mean probation. We know people that are allowed back in the community because we don't think they're going to hurt anybody and we set guidelines on them. And, other times, we put people in the Eaton County Jail for a period of time. And other times we send people to prison.
>
> * * *
>
> I agree with the author of the report that says that because the years of abuse, detailed in the presentence report, spanned a period of years and that the Defendant's behavior has escalated from inappropriate touching of children to repeated anal penetration and only stopped because the victims' mother ended the relationship, a sentence above the guidelines, and above the mandatory minimum

is warranted because the victims need to be protected and the future victims need to be protected.

After these statements the court imposed the indicated sentence.

## III. MATTERS OF RECORD WHICH THE MAJORITY CONCLUDES WARRANT REVERSAL

### A. TESTIMONY OF THOMAS COTTRELL

Respecting Thomas Cottrell's testimony, defendant argues and the majority agrees that he improperly testified regarding the frequency of child sexual abuse victims' fabrication of their allegations. I respectfully disagree.

In *People v Peterson*, 450 Mich 349, 352-353; 537 NW2d 857 (1995), amended 450 Mich 1212 (1995), our Supreme Court clarified that an expert witness may testify about the following:

(1) an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim, and (2) an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility.

In this case, Cottrell provided testimony that was "relevant and helpful, to generally explain the common post incident behavior of children who are victims of sexual abuse." *Id*. at 373. Cottrell testified generally about child victim disclosure of sexual abuse, how they decide to disclose, how they may act in the meantime, to whom they disclose, and how they may describe the sexual abuse in different situations. See *id*. at 379. Such testimony assisted the jury in this case. Cottrell did not testify regarding the victims' behavior in this case or whether their behavior was "consistent with that of a sexually abused child." *Id.* 450 at 374. Cottrell admitted that he had no specific knowledge of the facts surrounding this case or the victims, and he simply provided a general overview of how child sexual abuse victims may act. The general background information on child sexual abuse and delayed disclosure enabled the jury to evaluate the testimonies of the other witnesses including the victims. See *id*. at 380.

Defendant contends that he is entitled to reversal of his convictions because during cross-examination Cottrell testified that, in his experience in working with child sexual abuse victims, children sometimes make false disclosures. Defense counsel asked Cottrell to describe his experience with false disclosures.

Before defense counsel asked the question which elicited the now complained of responsive testimony, defense counsel had asked several very direct and leading questions and then he transitioned to open-ended questions. Review of defense counsel's cross-examination of Cottrell's challenged testimony in this case in context is revealing:

*Q.* All right. You've never met [DW] or [VS]; correct?

-3-

*A.* Correct.

*Q.* You don't even know who they are.

*A.* Correct.

*Q.* Have you given—were you given the fact pattern, at all?

*A.* By fact pattern, you mean the allegations that are in place?

*Q.* Yes.

*A.* Yes.

*Q.* And so, let's talk about you're here because of a disclosure, delay of disclosure; correct?

*A.* I believe so, yes.

*Q.* Okay. And you're here to explain why that may happen; correct?

*A.* Correct.

*Q.* And what is your experience with false disclosures?

*A.* My experience is that it does occur. It does occur on a very, very limited basis in my practice. In my supervision and my own work at the YWCA, I can maybe point to 10 times over—well over 3,000 children that we believed that the disclosure was false. Very different reasons behind it, each one of them.

*Q.* I'm sorry?

*A.* Very different reasons behind each one of them.

*Q.* And what are typical reasons behind false disclosures?

*A.* Well, for younger children, what we found is if they're—they disclose abuse when there's a sibling who is involved in counseling and they want to be involved too . . .

\* \* \*

We had a teen girl who disclosed sexual assault by her father when the reality was that there was actually domestic violence in the household but the mother wasn't doing anything to protect, so the child made the allegation in order to get authorities involved in the family.

*Q.* So, there's usually a benefit to the individual making those false disclosures.

-4-

*A.* That's correct, yes.

As indicated in the transcript section set forth above, in direct response to defendant's counsel's question, Cottrell responded that he could point to about 10 out of 3,000 children that he and his colleagues believed made false allegations. Defense counsel then asked what reasons typically were behind false disclosures. After Cottrell responded, defense counsel inquired further about the various reasons alleged victims made false disclosures. Defense counsel also obtained some concessions from Cottrell regarding the issue including that victims have difficulty remembering and their memories can be tainted. The record reflects that defense counsel revisited the false and late disclosure issues a number of times and directed Cottrell to consider hypothetical scenarios similar to the facts of this case to which Cottrell conceded that such dynamics could serve as the bases for false disclosures.

I disagree with the majority opinion that *People v Thorpe*, 504 Mich 230, 255; 934 NW2d 693 (2019), requires reversal under the specific circumstances of this case. In *Thorpe,* the Court addressed two cases: *Thorpe* and *Harbison*. In *Thorpe*, as in the matter at bar, Cottrell was an expert witness and his testimony involved percentages of children that lie about child sexual abuse. In *Harbison*, the issue addressed what a physician expert could and could not testify about regarding a diagnosis of "probable" child sexual abuse absent physical findings of sexual abuse.

The Court wrote:

> Thorpe's trial was a true credibility contest. There was no physical evidence, there were no witnesses to the alleged assaults, and there were no inculpatory statements. The prosecution's case consisted of BG's allegations, testimony by her mother regarding BG's disclosure of the alleged abuse and behavior throughout the summer and fall of 2012, and Cottrell's expert testimony. Thorpe testified in his own defense and denied the allegations. Additionally, Kimberly testified about other reasons for BG's behavior during the summer and fall of 2012; namely, that her mother had started a new relationship and become pregnant and that Thorpe had decided to no longer have parenting time with BG. Because the trial turned on the jury's assessment of BG's credibility, the improperly admitted testimony wherein Cottrell vouched for BG's credibility likely affected the jury's ultimate decision. Under these circumstances, we conclude that Thorpe has shown that it is more probable than not that a different outcome would have resulted without Cottrell's improper testimony. [*Thorpe*, 504 Mich at 260.]

Addressing the *Harbison* matter, the Court wrote:

> And much like *Thorpe*, the instant case is largely a credibility contest. The only evidence against Harbison was TH's uncorroborated testimony. To bolster its case, the prosecution presented testimony from a pediatrician who is board-certified in child abuse pediatrics; who is currently a medical director at the Safe Harbor Children's Advocacy Center; who has examined, in her estimate, thousands of children that have been sexually abused; and who has testified as an expert witness in 32 counties. Given the lack of compelling testimony that forms the basis for the verdict and the plainly erroneous testimony that TH suffered "probable pediatric

sexual abuse," we conclude that the plain error affected Harbison's substantial rights. [*Id*. at 264.]

The facts of the instant case are materially different from the facts of the two matters giving rise to *Thorpe*. At bar, the case is not a one-on-one credibility contest that was overwhelmed by Cottrell's testimony. Rather, as indicated above, four witnesses testified, two complaining witnesses in the instant matter regarding the charges at bar, and two witnesses under MCL 768.27a who clearly and unequivocally testified as to the abuse they suffered from defendant.

In *People v Beckley*, 434 Mich 691, 731-732; 456 NW2d 391 (1990), our Supreme Court considered a very similar trial occurrence and explained:

> This is an example of a line of questioning which, on direct examination, would be inappropriate. However, it was defense counsel who opened the door to this line of questioning and who elicited this response from the testifying expert. Defendant's question was direct, and he left open the possibility that the expert would respond negatively and in a manner that could be construed as an expert conclusion with regard to the truthfulness of the victim's allegations. On direct examination, similar testimony crosses the line of acceptability, yet in this case reversal is not required in view of the fact that the response was brought out by defendant. Defendant cannot now complain that the expert's testimony served to vouch for the complainant's credibility when he allowed and in fact drew out the response. To hold otherwise would allow defendant an appellate parachute to escape conviction because of damaging testimony that turns the tide toward the believability of the complainant's allegations.

Here, the record reflects that defense counsel specifically elicited the testimony from Cottrell about which he now complains. That testimony triggered the prosecution's follow-up inquiry that similarly addressed the circumstances under which alleged victims make false allegations. During additional cross-examination, defense counsel continued to explore the issue to discredit the victims' allegations. Defendant's open-ended inquiry and further questioning on the topic cannot serve as the basis for claiming error on appeal. Under *Beckley*, defendant is not entitled to reversal of his convictions.

Further, analysis of the record does not support defendant's argument that his counsel provided him ineffective assistance. Defendant "must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (citation omitted). Defendant must show that his trial counsel's actions were not a "result of reasonable professional judgment." *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy, as is a decision concerning what evidence to highlight during closing argument." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008) (citations omitted). This Court must not "substitute [its] judgment for that of counsel on matters of trial strategy" or "use the benefit of hindsight when assessing counsel's competence." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008) (citation omitted). To establish ineffective assistance of counsel, defendant

"must show that, but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011).

In this case, close analysis of defense counsel's cross-examination of Cottrell indicates that he elicited the testimony to strategically call into question the victims' credibility, cast doubt on the veracity of their late disclosures of child sexual abuse, challenge their memories, and provide grounds for arguing that the victims had ulterior motives for making false allegations of sexual abuse against defendant. Defendant has failed to overcome the strong presumption that defense counsel engaged in strategic action directed to persuade the jury to reasonably doubt defendant's guilt of the charged offenses. Accordingly, I would affirm defendant's convictions.

## B. DR. GUERTIN

Respecting Dr. Guertin's testimony, I am also not persuaded that defendant is entitled to reversal of his convictions because he has failed to establish plain error affecting his substantial rights. Defendant first argues that Dr. Guertin improperly testified regarding statements that VS and DW made to him during his medical examination and the majority agreed. I disagree because the record establishes that VS's and DW's statements were made for purposes of obtaining medical treatment or advice, and therefore, admissible under MRE 803(4).

Under MRE 702, expert witness testimony is permitted,

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

MRE 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." "[I]t is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013) (citation omitted). Jurors, not expert witnesses, make credibility determinations. *Id*. at 348-349; *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007).

A physician or medical expert may not opine whether a complainant was sexually assaulted when the expert's opinion is based on the expert's assessment of the complainant's truthfulness or when the expert's opinion is based only on what the complainant told the medical expert. *Thorpe*, 504 Mich at 255. "Nonetheless, an examining physician, if qualified by experience and training relative to treatment of sexual assault complainants, can opine with respect to whether a complainant had been sexually assaulted when the opinion is based on physical findings and the complainant's medical history." *Id*. Although an expert may not testify that sexual abuse occurred and may not vouch for the veracity of a victim or whether the defendant is guilty,

> (1) an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a

victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim, and (2) an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility. [*Peterson*, 450 Mich at 352-353.]

In *Peterson*, our Supreme Court held

[T]he prosecution may present evidence, if relevant and helpful, to generally explain the common postincident behavior of children who are victims of sexual abuse. The prosecution may, in commenting on the evidence adduced at trial, argue the reasonable inferences drawn from the expert's testimony and compare the expert testimony to the facts of the case. Unless a defendant raises the issue of the particular child victim's postincident behavior or attacks the child's credibility, an expert may not testify that the particular child victim's behavior is consistent with that of a sexually abused child. Such testimony would be improper because it comes too close to testifying that the particular child is a victim of sexual abuse. [*Id*. at 373-374.]

MRE 801(c) defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 802 provides that hearsay is inadmissible unless permitted under the evidence rules. MRE 803 provides specific exceptions to that general rule. Under MRE 803(4), "[s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment."

"The rationale for MRE 803(4) is the existence of (1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient." *People v Shaw*, 315 Mich App 668, 674; 892 NW2d 15 (2016) (quotation marks and citation omitted). "This is true irrespective of whether the declarant sustained any immediately apparent physical injury." *People v Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011). Additionally,

in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment. [*Id*.]

"Further, when the patient is over ten years old, as here, a rebuttable presumption of truthfulness arises." *People v Crump*, 216 Mich App 210, 212; 549 NW2d 36 (1996) (citation omitted).

Factors related to trustworthiness guarantees surrounding the actual making of the statement include: (1) the age and maturity of the declarant, (2) the manner in which the statements are elicited (leading questions may undermine the trustworthiness of

a statement), (3) the manner in which the statements are phrased (childlike terminology may be evidence of genuineness), (4) use of terminology unexpected of a child of similar age, (5) who initiated the examination (prosecutorial initiation may indicate that the examination was not intended for purposes of medical diagnosis and treatment), (6) the timing of the examination in relation to the assault (the child is still suffering pain and distress), (7) the timing of the examination in relation to the trial (involving the purpose of the examination), (8) the type of examination (statements made in the course of treatment for psychological disorders may not be as reliable), (9) the relation of the declarant to the person identified (evidence that the child did not mistake the identity), and (10) the existence of or lack of motive to fabricate. [*People v Meeboer (After Remand)*, 439 Mich 310, 324-325; 484 NW2d 621 (1992) (citations omitted).]

In *Meeboer*, our Supreme Court clarified that in cases of suspected or alleged child abuse, a trial court should consider the totality of the circumstances to determine the trustworthiness of a child's statement and whether the child understood the importance of telling the treating physician the truth. *Id*. at 325-326.

Regarding the reasonable necessity of the statements, information regarding the declarant's physical and psychological injuries can be reasonably necessary for medical diagnosis and treatment of the declarant's trauma. *Id*. at 328-329. Medical diagnosis and treatment of a victim involve treatment of her medical, physical, developmental, and psychological well-being. *Id*. at 329. Questions and discussion regarding the identity of the perpetrator may be reasonably necessary as it relates to the diagnosis and treatment of diseases, pregnancy, and the psychological impact of the abuse. *Id*. at 328-329. Disclosing the identity of the perpetrator itself can be a portion of the injury that a victim experiences from a sexual assault. *Id*. at 329.

In this case, the victims' statements to Dr. Guertin were admissible under MRE 803(4) because the record does not support defendant's contention that they were not made for the purpose of obtaining medical treatment or advice. Analysis under the guiding factors articulated in *Meeboer* supports this conclusion. The record reflects that Dr. Guertin unquestionably held the requisite expertise based upon his knowledge, education, and over 30 years' experience in performing medical examinations, diagnosing, and providing treatment to alleged sexually abused children. Further, he testified regarding the protocol used to obtain the medical history from VS and DW before physically examining them for diagnosis and treatment. He used age appropriate open-ended questioning with each child to learn the background of VS's and DW's experiences of alleged sexual abuse. Through his dialogues with VS and DW he established the general nature of the alleged sexual abuse, the frequency and duration over time of the abuse, and the lack of temporal proximity because of their late disclosures. From both VS's and DW's statements about their respective medical histories, Dr. Guertin determined the manner of physical examination and testing necessary. VS's and DW's statements about the penetrations of their bodies by defendant permitted Dr. Guertin to focus his physical examinations. Because of the delayed disclosures, Dr. Guertin did not anticipate physical findings but examined the victims' genital areas for indicators of prior injury. He testified that he found no physical findings in either case indicative of abuse and explained how definitive conclusions could not be drawn from normal findings because of a body's function and its ability to heal given time. Nevertheless, because of the histories provided by VS and DW, Dr. Guertin tested each of them for sexually transmitted diseases. The record

reflects that the medical history statements made by both VS and DW guided Dr. Guertin's examinations and treatment.

On cross-examination, defense counsel interrogated Dr. Guertin on the victim's medical histories and the results of their medical examinations eliciting reiteration of the statements made by VS and DW. Defense counsel asked whether VS or DW told him about specific details of the abuse and elicited concessions from Dr. Guertin that his medical examinations failed to corroborate anything either VS or DW told him and proved nothing.

The record indicates that Dr. Guertin relied on VS's and DW's statements to provide adequate medical diagnosis and treatment. The method of acquiring the medical history from VS and DW served to ensure the reliability of the declarants' statements for that specific purpose. VS and DW communicated without suggestion or influence by others and revealed relevant information for proper medical diagnosis and treatment. Dr. Guertin's testimony regarding VS's and DW's statements fell within the ambit of MRE 803(4) because the record establishes that both VS and DW were motivated to speak the truth to him as their treating physician in order to receive proper medical care, and their statements were reasonably necessary for his diagnosis and treatment of them as his patients.

Defendant takes issue with the fact that law enforcement referred VS and DW to Dr. Guertin. Although *Meeboer* indicates that is one factor for analysis of the trustworthiness of a declarant's statements, *Meeboer* does not direct that this lone factor is dispositive of the issue. The record does not indicate that Dr. Guertin considered or relied on any information provided by law enforcement or any third party. He testified that he conducted independent interviews to obtain medical histories from VS and DW which informed and guided his independent medical examinations, diagnoses, and treatment. The record does not indicate any influence by others. Considering the totality of the circumstances in this case, the fact that law enforcement referred VS and DW to Dr. Guertin does not alter the conclusion that VS and DW provided Dr. Guertin statements reasonably necessary for diagnosis and treatment. Accordingly, Dr. Guertin's testimony regarding their statements was not hearsay but admissible under MRE 803(4). Therefore, defendant has failed to establish that plain error occurred because Dr. Guertin testified about statements made by VS and DW during his medical examinations of them.

Defendant also claims that Dr. Guertin told the jury that he considered VS's allegations "verified" and improperly opined that she told the truth about being sexually abused. Close examination of the record, however, does not support defendant's contention. In *Thorpe*, our Supreme Court reiterated that "an examining physician cannot give an opinion on whether a complainant had been sexually assaulted if the conclusion [is] nothing more than the doctor's opinion that the victim had told the truth." *Thorpe*, 504 Mich at 255 (quotation marks and citation omitted; alteration in original). "Nonetheless, an examining physician, if qualified by experience and training relative to treatment of sexual assault complainants, can opine with respect to whether a complainant had been sexually assaulted when the opinion is based on physical findings and the complainant's medical history." *Id.* (citation omitted). In *People v Del Cid (On Remand)*, 331 Mich App 532, ___; ___ NW2d ___ (2020) (Docket No. 342402); slip op at 9 n 6, this Court explained:

To be clear, when there are no physical findings, a physician may not testify that the complainant suffered "possible pediatric sexual abuse" or other phrases indicating a conclusion as to the likelihood that such abuse actually occurred. At the same time, however, a medical expert may offer the opinion that a lack of physical findings does not affirmatively establish that no abuse occurred.

Review of Dr. Guertin's challenged testimony in this case in context is revealing:

*Prosecution*:    . . . Was there any other history from [VS] that was significant to you as a medical doctor?

*Dr. Guertin*:  Yes.

*Prosecution*:  What else?

*Dr. Guertin*:  Well, I asked her why she took so long to tell about it. And she said that she told about it now, or at this time, because her mom was now getting a new boyfriend.

*Defense counsel*:  Your Honor, I'm gonna object to that form of questioning. Again, I don't know how that's relevant to a medical examination.

*Prosecution*:  I can ask Dr. Guertin why its relevant.

*Court*:  No, why you think it's relevant. Go ahead, ask him.

*Prosecution*:  Okay. Dr. Guertin, can you tell me why this particular history was relevant to you as a medical doctor?

*Dr. Guertin*:  Yes, because she had been described—been describing sexual abuse by a boyfriend. Mom's about to get a new boyfriend. What she's worried about is being sexually abused again and, to me, that's important. It speaks to her motive and—and her fears, and it, to some extent, in my opinion, verifies what she said about what happened to her in the past.

*Prosecution*:  After you got the history from [VS], did you move on, then, to the—to the physical evaluation or examination—I'm sorry, the examination of [VS]?

*Dr. Guertin*:  Yes.

Analysis of this passage reveals that defense counsel invited the explanation and made no objection to it, no request to strike the testimony about which defendant now claims error, made no motion for a mistrial, nor any request for a special jury instruction. Defense counsel sought the relevance of the question and Dr. Guertin provided the answer to the relevance objection. His response indicates that Dr. Guertin had concern about VS's motive for making her disclosure of sexual abuse years after its alleged occurrence. VS indicated to him that she feared repetition of her past experience which revealed that she lacked a motive to fabricate allegations for retribution

against defendant. As such, VS's medical history and reason for late disclosure contributed to Dr. Guertin's medical decision to perform the physical examination of the patient. Moreover, review of the entirety of Dr. Guertin's testimony in this case reveals that he never testified that he believed VS's allegations, never vouched for her or otherwise improperly indicated that she had been sexually abused. Dr. Guertin testified that he found no physical injury based upon the victim's physical examination and agreed with defense counsel during cross-examination that the medical examination proved nothing respecting whether VS had actually been sexually abused. Further, Dr. Guertin offered no opinion regarding whether he believed sexual abuse occurred or perhaps probably occurred, nor gave any opinion regarding defendant's guilt of the charged offenses.

Based upon the record in this case, I conclude that defendant has failed to establish plain error that affected his substantial rights. Given the testimonies of the victims and other witnesses, the jury had sufficient evidence from which they could determine defendant's guilt beyond a reasonable doubt. Defendant has failed to establish grounds for reversal of his convictions. He has not and cannot show that the jury convicted an actually innocent person and I am not convinced that the record establishes that he was denied a fair trial or that the trial affected the integrity or public reputation of judicial proceedings independent of defendant's innocence.

I am also not convinced that defense counsel provided ineffective assistance by not objecting further to Dr. Guertin's testimony or seeking some other relief. The record indicates that defense counsel chose not to draw attention to the testimony and allowed the offhand remark to go unchallenged to later establish for the jury that Dr. Guertin's testimony proved nothing. Trial attorneys often do that in furtherance of sound defensive strategies. Defense counsel effectively cross-examined Dr. Guertin and obtained significant concessions from him that established that nothing in his medical examinations of the victims proved that sexual abuse had ever occurred. Defense counsel presented evidence to cast reasonable doubt upon the prosecution's case against defendant. Defendant, therefore, has not overcome the presumption that his counsel acted out of a sound trial strategy. Moreover, even if defense counsel's performance fell short of an objective standard of reasonableness, defendant has not established that, but for this instance of defective performance, he would not have been convicted of the charged offenses.

## IV. CONCLUSION

Review of the entire record makes clear that defendant was well and capably represented by an engaged and experienced trial attorney[1] who professionally, proficiently, and strategically fulfilled his representation of defendant. The now challenged testimony of Cottrell and Dr. Guertin was either in response to an objection interposed by defendant's counsel during the direct exam of the witness or to a direct question by defendant's counsel on cross-examination. These two responses were brief in nature without objection, request for a curative instruction, a sidebar conference[2] or motion for mistrial interposed at any time. The objection by and question of

---

[1] Defense counsel had also represented defendant in this matter in the first trial of these charges which resulted in a hung jury.

[2] The record indicates multiple sidebar conferences and matters taken up without the presence of the jury.

defense counsel was part of three days of trial testimony from 12 different witnesses, 10 on behalf of the prosecution and 2 on behalf of defendant.

Applying the law as discussed *supra* to the facts of this case, I conclude that the response to the objection interposed by defense counsel during Dr. Guertin's testimony was not error warranting reversal. Further, I conclude the responsive answer to the open-ended question to Cottrell to what appears to be part of a series of strategically placed questions was not error, and even if it were error, it did not warrant reversal.

In reaching these conclusions, I am mindful of our state's highest Court's instructions in *Thorpe:*

> To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal.
>
> Preserved nonconstitutional errors are subject to harmless-error review under MCL 769.26, which states:
>
>> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has *resulted in* a *miscarriage of justice.*
>
> In sum, if the issue is preserved, the defendant has the burden of establishing a miscarriage of justice under a "more probable than not" standard. If the constitutional or nonconstitutional error is not preserved, the defendant must show a plain error that affected substantial rights. The reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. [*Thorpe*, 504 Mich at 252-253 (citations omitted, emphasis in original).]

Even if plain error occurred below, which I do not believe happened, either considering each assignment of error alone or cumulatively, I do not believe reversal is appropriate because it does not appear defendant was actually innocent nor do defendant's counts of conviction or the sentences imposed as a result thereof seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

For these reasons, I respectfully dissent. I would affirm defendant's convictions and sentences.

/s/ James Robert Redford

-13-