*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
April 25, 2024

v

SHANE MEL JOHNSON,

        Defendant-Appellant.

No. 364576
Ottawa Circuit Court
LC No. 21-044506-FC

Before: BOONSTRA, P.J., and FEENEY and YOUNG, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b) (victim between 13 and 16 years of age and related to defendant). The trial court sentenced defendant to serve two concurrent prison terms of 240 to 480 months (20 to 40 years). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 2021, defendant's niece, RC, disclosed to police an extensive history of sexual contact between her and defendant that occurred between 2009 and 2013, when RC was between the ages of 13 and 16. RC testified to that extensive history at trial, stating that she and defendant had had oral, vaginal, and anal sex hundreds of times over that time period. RC testified that she believed that defendant was her boyfriend when she was 15 years old. RC testified that she would sit on defendant's lap while he played poker at family gatherings, and that they first had vaginal intercourse in her home while "spooning" on a beanbag in the living room. She also testified that defendant took her to a hotel room to have sex "at least a hundred times." RC testified that defendant would pick her up from school or her home to take her to work for his painting company, or to taekwondo practice, and that they would often go to defendant's house to have sex instead of either working or practicing taekwondo.

RC recorded a phone call between her and defendant in 2021; this recording was admitted and published to the jury without objection. During the phone call, RC made references to their past sexual relationship; defendant responded by telling her that he would meet with her to talk in person, but he never denied her statements.

Defendant was interviewed by police detectives in March 2021 and denied the charges against him. Prior to trial, defendant objected to the admission of portions of the interview, arguing that statements by the interviewers appeared to bolster RC's credibility, and that they should be excluded under *People v Musser*, 494 Mich 337; 835 NW2d 319 (2013). The trial court ordered that the interview be redacted to exclude all statements made after defendant unequivocally invoked his right to remain silent, but it did not otherwise redact any specific statements. The redacted interview was admitted at trial and published to the jury.

RC's mother testified at trial that she had observed defendant and RC "spooning" on the couch once during the relevant time period, and that she had noted at the time that it appeared to be "more like a boyfriend-girlfriend relationship than it was an uncle and niece." RC's mother further testified that she discussed this incident with RC at the time but that RC had denied any inappropriate behavior. RC's sister testified and also confirmed that she had seen defendant and RC "spooning" on the couch; she also testified that she had seen RC sit on defendant's lap while he played poker. One of RC's high school friends testified that she knew of the relationship between defendant and RC while it was going on, but that she had not told anyone. Several of defendant's family members also testified that they had observed RC sit on defendant's lap during poker games. Multiple family members confirmed that defendant would pick RC up from home or school to go to taekwondo practice or to go to work with him.

Barbara Welke, a forensic interview consultant, testified as a prosecution expert concerning delays in disclosure of child sexual abuse. A police detective testified that he was unable to obtain any hotel records indicating that defendant had stayed at certain hotels named by RC during the relevant time. A records custodian for one of the named hotels also testified to her failure to find any records that defendant had ever stayed there.

Defendant testified and denied ever having a sexual or dating relationship with RC, taking her to hotels, or "spooning" with her. Defendant testified that he took RC to taekwondo practice or to work with him, and that RC had occasionally slept over at his house on the couch. Defendant testified that he had a poor memory of the recorded phone call because he had been grieving his wife's death at the time.

The jury convicted defendant as described. At sentencing, defendant's minimum guidelines range was calculated at 108 to 180 months, with offense variable (OV) 8 scored at 15 points. Defendant objected to the scoring of OV 8, but the trial court upheld the score. The trial court determined that out-of-guidelines sentences were warranted, stating in relevant part:

> Departures are appropriate where the guidelines do not adequately account for important factors that should be legitimately considered at sentence. The court does have aspects in this case that were not adequately accounted for in the guidelines and does lead me to impose a sentence outside the recommended range. This is a serious offense. The relationship between the defendant, the uncle, and the victim in this case, [RC] his niece, has reported a number of times that this occurred over approximately a three or four year period of time is very disturbing to the court and is why the court is going above the guidelines. The court also considers the defendant's lack of remorse in this in regard to the sentence. The following explains why in this particular case it is more appropriate for the offense and the

offender that a sentence be more than the guidelines range. Primarily the number of times this occurred and the years over which it occurred is the reason the court is departing above the guidelines. The assaults occurred hundreds of times over the three or four year period of time. So OV-13 is scored at 25 points for three or more crimes against a person, but the defendant here was a serial, selfish, sexual abuser of his niece, so hundreds of times the victim had to endure this sexual intercourse by the defendant and that's not being taken into consideration by the facts of the— or by the calculation of the guidelines. So if OV-13 is scored for 25 points, if you have three sexual assaults, that means that each point is worth 8.33 points—that each act is worth 8.33 points. So there's a hundred times at least that the victim testified about how this happened. It happened a hundred times according to her at a hotel. It also happened about every Tuesday night and it happened other times, so let's just say it happened a hundred times for 8.33 points. That means the point value on this is 800.33, so really he would be off the charts on the offense variables . . . . And the court also considers the defendant's lack of remorse . . . . The fact that [defendant] never denied it over [the recorded] phone call, that he never denied having sexual relations with the victim is also not calculated in the guidelines . . . . The court has read through [defendant's] letters of support and understands that this is a divided family now, but the court also wants the family to understand as well as you, [defendant], that a jury decided this and made the decision and believed [RC] and believed what she had to say and believed that you did these things.

The trial court sentenced defendant as described. This appeal followed.

## II. JUDICIAL QUESTIONING

Defendant argues that the trial court pierced the veil of judicial impartiality by bolstering RC's credibility when questioning her and two other witnesses. We disagree.

"The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). Judicial bias is a structural error that renders the determination of defendant's guilt or innocence unfair or unreliable. *Id*. at 178-179. Therefore, "once a reviewing court has concluded that judicial misconduct has denied the defendant a fair trial, a structural error has occurred and automatic reversal is required." *Id*. at 168.

The Sixth Amendment of the United States Constitution and Article 1, § 20 of the Michigan Constitution guarantee a defendant the right to a fair and impartial trial. "[T]he initial assumption is that a trial judge designs to be impartial." *Stevens*, 498 Mich at 175. See also *Bracy v Gramley*, 520 US 899, 904-905; 117 S Ct 1793; 138 L Ed 2d 97 (1997). In *People v Conley*, 270 Mich App 301, 308; 715 NW2d 377 (2006) (quotation marks and citation omitted), this Court stated as follows:

The appropriate test to determine whether the trial court's comments or conduct pierced the veil of judicial impartiality is whether the trial court's conduct or comments were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial.

-3-

In *Stevens*, 498 Mich at 172, the Michigan Supreme Court determined that reviewing courts should consider a variety of factors when determining whether a trial judge's conduct showed partiality, including:

> [T]he nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions.

"Reviewing courts may consider additional factors if they are relevant to the determination of partiality in a particular case." *Id*. "These errors must be considered within the context of a given case, i.e., the totality of the circumstances, to determine whether the judge demonstrated the appearance of advocacy or partiality on the whole." *Id*. "[A]n objection by trial counsel may specifically note the inappropriateness of the judge's demeanor in the courtroom, further aiding the appellate court in understanding the tenor of judicial involvement." *Id*. at 176. "[T]he central object of judicial questioning should be to clarify. Therefore, it is appropriate for a judge to question witnesses to produce fuller and more exact testimony or elicit additional relevant information." *Id*. at 173-174 (citations omitted).

In this case, defendant argues that the judge improperly questioned: (1) RC, (2) Welke, and (3) defendant's son. Defense counsel did not object to any of the trial court's questions.

Regarding the first factor, based on our review of the transcript and defendant's lack of objection, see *id.*, we conclude that the trial judge's courtroom demeanor and tone throughout the trial were not inappropriate. Additionally, while the trial court asked RC more questions than it asked other witnesses, she also testified the longest—approximately $4^{1}/_{2}$ hours over the course of two days. And the jury was instructed that the trial court's comments and questions were not evidence.

Defendant specifically argues that the trial judge's questions to RC regarding oral sex were repetitive and served to highlight her accusations, not clarify her testimony. We disagree and conclude that the trial judge's questions properly sought clarification. At the beginning of jury selection, the trial court described the sexual penetration alleged in Count 2 as "oral-penis/mouth with a child"—additionally, during opening arguments, the prosecutor explained that Count 2 referred to "oral sex that took place involving the defendant's penis going inside of the victim['s] mouth." When RC testified that she had performed "oral sex" on defendant, the trial court asked her for clarification regarding what *she* meant by the use of the term, and RC elaborated that the term meant, "Me sucking on his penis." Because the nature of the sexual act was an integral element of one of the charges against defendant, it was important for the trial court to clarify—with appropriate terminology—what RC meant by the term "oral sex." Further, although the trial court did ask for clarification twice, the questions related to RC's testimony concerning separate instances of oral sex.

Defendant further argues that the trial judge's questions regarding anal sex were unnecessary and "only served to have her provide gratuitous detail which bolstered [RC's] credibility and made [defendant] look deviant." We disagree. After RC testified to an instance

-4-

involving "anal sex," the trial court asked similar questions regarding what she meant specifically by that phrase. For similar reasons, we conclude that the questions were proper.

On the whole, the nature of the trial court's clarifying questions was appropriate. All of the *Stevens* factors—in addition to the assumption "that a trial judge designs to be impartial," *id*. at 175—support the finding that the trial judge did not pierce the veil of judicial impartiality when questioning RC.

Defendant also argues that the trial judge improperly questioned Welke because the court's question only served to repeat and amplify Welke's testimony. We disagree. On cross-examination, Welke stated, "Delays are not atypical for child victims." The trial judge then asked Welke the following: "So when you say atypical, it means that it is—okay. Say it another way as far as delays being atypical, also meaning . . . ." Welke responded, "It is not unusual for a child to delay before they disclose their abuse to someone." The trial judge simply asked for clarification regarding Welke's use of the word "atypical," to which Welke clarified that she meant "unusual." The trial judge did not pierce the veil of judicial impartiality when questioning Welke.

Defendant further argues that the trial judge's questioning of defendant's son—regarding when he worked for defendant's company—was improper because it served to damage the son's credibility. We disagree.

Defendant's son testified that he worked for defendant's company and that he could only remember one time that RC worked with him and defendant. Moreover, when defendant's son was asked if he was with RC and defendant when they were in defendant's car, the son stated, "Not [100%] of the time, but if I wasn't, there was somebody else with them, yes." This testimony directly conflicted with RC's testimony; therefore, it was important for the trial judge to clarify the time period to which defendant's son was testifying, to discover whether he and RC were testifying about the same time period. Although the trial judge's questioning of defendant's son was long, it was only long because defendant's son was initially unsure of when he began working with defendant. The trial judge simply asked similar questions in different ways to jog the witness' memory and clarify to which time period he was testifying.

Defendant further argues that the trial judge's questioning of his son regarding his qualifications was improper. We disagree. Defendant's son testified that, after his mother (defendant's wife) died, defendant showed signs of dementia. The prosecutor objected on the basis of relevancy and speculation, and the trial court stated as follows:

> *The Court*: Does he have a base—do you have a basis, any sort of medical degree on that or not?
>
> [*Defendant's Son*]: My mother-in-law has dementia.
>
> *The Court*: Do you have a medical degree on that or not?
>
> [*Defendant's Son*]: I do not, no.
>
> *The Court*: Okay. So that part will be stricken.

The trial court was simply ensuring that the son did not have a basis for using the medical term "dementia." Defendant's son was still able to testify to his personal observations regarding defendant's behavior after his wife died; he was merely unable to diagnose him with a medical condition without possessing the necessary expertise to do so.

Accordingly, the trial judge did not pierce the veil of judicial impartiality, and defendant was not denied a fair trial. *Conley*, 270 Mich App at 308.

## III. ADMISSION OF POLICE INTERVIEW

Defendant also argues that the trial court abused its discretion by admitting a police interview containing statements from police interviewers that improperly bolstered RC's credibility. We conclude that, regardless of whether the trial court abused its discretion by admitting the detective's statements, any such error is not grounds for reversal because it was not outcome-determinative in this case.

"The decision whether to admit evidence is within the trial court's discretion, which will be reversed only where there is an abuse of discretion." *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010).

> However, if an evidentiary error is a nonconstitutional, preserved error, then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative. An error is outcome determinative if it undermined the reliability of the verdict and, in making this determination, a court should focus on the nature of the error in light of the weight and strength of the untainted evidence. [*Musser*, 494 Mich at 348 (quotation marks and citation omitted).]

Relevant evidence is generally admissible. MRE 401. However, hearsay evidence, that is, an unsworn, out-court-statement that is offered in evidence to prove the truth of the matter asserted, is not admissible unless it falls under one of the hearsay exceptions found in the Michigan Rules of Evidence. MRE 801(c); MRE 802; *Musser*, 494 Mich at 350. Out-of-court statements offered for a purpose other than to prove the truth of the matter asserted are not hearsay. MRE 801(c). But such statements are not automatically admissible. "This Court has long held that even if an out-of-court statement is not offered for the truth of the matter asserted, the statement is not automatically admissible because the touchstone of admissibility is relevance." *Musser*, 494 Mich at 354 (quotation marks and citation omitted). An interrogator's statement may be relevant to provide context to the defendant's statement, even if the statement is not offered for the truth of the matter asserted. *Id*. at 354-355.

> Determining whether a statement is relevant requires a trial court to carefully scrutinize whether the statement is both material—i.e., offered to help prove a proposition which is . . . a matter in issue—and probative—i.e., tends to make the existence of any fact that is of consequence to the determination of the

action more probable . . . than it would be without the evidence. [*Id*. at 355 (quotation marks and citation omitted; alterations in original).]

In determining the admissibility of such statements, a trial court must "evaluate the probative value of the out-of-court statements in providing context to a defendant's statements and the resulting prejudice to a defendant before the interrogator's out-of-court statements are presented to the jury." *Id*. at 356-357 (quotation marks, citation, and alteration omitted).

> [A]n out-of-court statement made by an investigating officer may be given undue weight by the jury where the determination of a defendant's guilt or innocence hinges on who the jury determines is more credible—the complainant or the defendant. Thus, even if an interrogator's statements are not offered for the truth of the matter asserted, courts must be mindful of the problems inherent in presenting the statements to the jury, especially in child-sexual-abuse cases. [*Id*. at 358 (quotation marks and citation omitted).]

If an interrogator's statements are determined to be admissible for the purpose of providing context for the defendant's statements, "a trial court shall restrict the interrogator's statements to their proper scope—to actually provide context to a defendant's statement." *Id*.[1]

In *Musser*, 494 Mich at 343-346, a video recording and corresponding transcript of the defendant's police interview was shown to the jury. During the interview, two detectives made statements indicating that they believed that a 12-year-old child alleging sexual abuse was telling the truth. See *id*. at 343-345. The defendant made a pretrial motion to exclude the detective's statements; however, the trial court denied defendant's motion, reasoning that the "statements either gave context to defendant's statements or were 'in the nature of the interrogation of the accused,' and the questions and answers could be favorable to both parties." *Id*. at 345.

Our Supreme Court noted that courts of various jurisdictions had come to "divergent conclusions" about how to apply the evidentiary rules in the context of a police interrogation interview. *Id*. at 351-353. Ultimately, the Court declined to adopt a bright-line rule excluding, in that context, officer statements commenting on another person's credibility, but held that:

> where the proponent of the evidence offers an interrogator's out-of-court statements that comment on a person's credibility for the purpose of providing context to a defendant's statements, the interrogator's statements are only admissible to the extent that the proponent of the evidence establishes that the interrogator's statements are relevant to their proffered purpose. See MRE 401. Even if relevant, the interrogator's statements may be excluded under MRE 403 and, upon request, must be restricted to their proper scope under MRE 105. [*Id*. at 353-354.]

---

[1] In other words, *Musser* merely presents a specific case of the general rule that the prosecution may not, through questioning or evidence, improperly bolster or attempt to bolster a witness's credibility by implying that the police or the prosecution have some special knowledge that the witness is telling the truth. See, e.g., *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995).

On the facts of that case, the Court concluded that "the trial court abused its discretion by failing to redact the majority of the detectives' out-of-court statements commenting on credibility from the recording that was played to the jury because they were irrelevant to their offered purpose of actually providing context to defendant's statements." *Id*. at 365-366.

In this case, defendant was interviewed by two detectives. Before trial, the prosecution moved to admit defendant's police interview. Defendant responded, objecting to the admission of any portion of the police interview containing statements from the police interviewers commenting on RC's credibility. Although defendant objected to the introduction of the interviewer's out-of-court statements, the trial court did not require the prosecution to establish the relevancy of the statements or determine if any probative value was outweighed by unfair prejudice. The trial court simply ruled that everything from page 51, line 5, of defendant's interview be excluded because defendant had made an unequivocal invocation of his right to remain silent. The trial court therefore, did not assess—nor do we—whether the officers' statements (earlier in the interview) should properly be admitted or excluded in the context of the police interview in this case.

We conclude that, regardless of whether the trial court abused its discretion by admitting the detectives' statements, reversal is not required. This case was not a one-on-one credibility contest between RC and defendant. Although none of the witnesses directly saw sexual acts occur between RC and defendant, many witnesses testified about RC and defendant's interactions and close relationship. This testimony also corroborated many parts of RC's testimony, such as her sitting on defendant's lap while he played poker, "spooning" with defendant, and defendant picking her up from school or home to work or go to taekwondo practice. Further, RC's high school classmate testified that she knew that the victim was in a relationship with defendant when they were in high school. Moreover, defendant chose to testify (and in fact specifically denied "spooning" with RC despite numerous witnesses testifying to the contrary), which gave the jury the opportunity to assess defendant's credibility for itself. Therefore, it does not "affirmatively appear[] that, more probably than not, [any error] was outcome determinative." *Id*. at 348.

## IV. OUT-OF-GUIDELINES SENTENCES

Defendant also argues that the out-of-guidelines sentences imposed by the trial court were unreasonable and disproportionate. We disagree.

A sentencing court that departs from the applicable guidelines range no longer needs to supply a substantial or compelling reason for doing so. *People v Lockridge*, 498 Mich 358, 364-365; 870 NW2d 502 (2015). "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *Id*. at 392; see also *People v Posey*, 512 Mich 317; ___ NW3d ___ (2023). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). "[A]ppellate review of departure sentences for reasonableness requires review of whether the trial court abused its discretion by violating the principle of proportionality . . . ." *Id*. at 477. Instead of measuring proportionality by references to deviations in the guidelines, the Michigan principle of proportionality "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 474 (quotation marks and citation omitted). See also *Graham v Florida*, 560 US 48, 59; 130 S Ct 2011; 176 L Ed 2d 825 (2010).

Sentencing guidelines are advisory, not mandatory. *Lockridge*, 498 Mich at 399. However, "they remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *Id*. at 391. "[T]rial courts 'must consult those Guidelines and take them into account when sentencing.' " *Id*., quoting *United States v Booker*, 543 US 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005); see also *People v Dixon-Bey*, 321 Mich App 490, 524-525; 909 NW2d 458 (2017). However, under the principle of proportionality, "the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Steanhouse*, 500 Mich at 472 (quotation marks and citation omitted). A sentencing court may impose an out-of-guidelines sentence without a substantial and compelling reason to do so, but it "must justify the sentence imposed in order to facilitate appellate review." *Lockridge*, 498 Mich at 391-392.

A court should consider several factors when determining whether an out-of-guidelines sentence is more proportionate than a sentence within the guidelines range, including "(1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight." *Dixon-Bey*, 321 Mich App at 525. These factors are not an exhaustive list of considerations—for example, "the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation" may also be considered, if appropriate. *People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017) (quotation marks and citation omitted).

In this case, defendant's sentencing guidelines range was 108 to 180 months (9 to 15 years). However, the trial court sentenced defendant, outside of the recommended guidelines range, to concurrent sentences of 240 to 480 months (20 to 40 years). Regarding the decision to impose an out-of-guidelines sentence, the trial court stated that it had read through defendant's sentencing memorandum as well as defendant's letters of support; therefore, the trial court properly considered defendant's lack of criminal history and impact on people around him. The trial court also considered defendant's lack of remorse. Most notably, the trial court considered the fact that the highest points that could be assessed for OV 13 accounted for "3 or more crimes against a person," MCL 777.43(1)(c). The trial court stated that it did not believe that OV 13 adequately accounted for the hundreds of times that defendant had sexually assaulted RC over a period of years. In other words, the trial court found that the number of times that defendant had assaulted RC was "considered by the guidelines but given inadequate weight." *Dixon-Bey*, 321 Mich App at 525. We agree. RC testified that, apart from having sex "all over" defendant's house, including at least fifteen times in the basement, there had been "at least a hundred times," that defendant took her to hotels where they had sex. Moreover, she testified that sexual acts also occurred in defendant's truck, in RC's family's living room, and at two other houses.

In *People v Smith*, 482 Mich 292, 315; 754 NW2d 284 (2008), our Supreme Court stated that "mathematical precision in sentencing is neither required nor possible." Therefore, a mathematical justification—the number of points per act under OV 13—was not required. However, through its justification, the trial court gave very clear reasoning behind the decision to depart from the sentencing guidelines range, and the amount of that departure. We conclude that the trial court did not abuse its discretion when it sentenced defendant according to this reasoning. *Steanhouse*, 500 Mich at 471, 477.

## V. OV 8

Defendant argues that the trial court incorrectly assessed OV 8 because there was no evidence of asportation connected to the sentencing offenses. We disagree.

We review de novo a trial court's "application of the facts to the law" to determine "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute . . . ." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). We review the trial court's factual determinations, used for sentencing under the sentencing guidelines, for clear error, and those determinations must be supported by a preponderance of the evidence. *Id*. We will conclude that the trial court's factual determinations are clearly erroneous only if we are left with a definite and firm conviction that the trial court made a mistake. *People v Dickinson*, 321 Mich App 1, 21; 909 NW2d 24 (2017).

Due process requires that a defendant be sentenced only on the basis of accurate information; therefore, "a sentence is invalid if it is based on inaccurate information." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997).

OV 8, MCL 777.38, refers to victim asportation or captivity, and provides in relevant part:

> (1) Offense variable 8 is victim asportation or captivity. Score offense variable 8 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

> (a) A victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense ............................................................................................. 15 points

> (b) No victim was asported or held captive .................................... 0 points

In *People v Barrera*, 500 Mich 14, 21; 892 NW2d 789 (2017) (quotation marks and citation omitted), our Supreme Court stated that asportation occurs "[i]f a victim is carried away or removed to another place of greater danger or to a situation of greater danger . . . ." Moreover, "movement of a victim that is incidental to the commission of a crime nonetheless qualifies as asportation." *Id*. at 17. In *Barerra*, 500 Mich at 21-22, the Michigan Supreme Court determined that 15 points were appropriately scored for OV 8 because the defendant moved "the victim from the living room into his bedroom in order to sexually assault her." The Supreme Court reasoned as follows:

> From those facts, the trial court could reasonably determine by a preponderance of the evidence that the victim was 'removed' to a location where the sexual assault was less likely to be discovered, which rendered the location a 'place of greater danger' or 'a situation of greater danger.' Given that determination and because such movement, whether incidental to the offense or meaningfully deliberate, may suffice to assess points for OV 8, OV 8 was properly scored at 15 points. [*Id*. at 22 (citation omitted).]

Further, when scoring OV 8, "movement of a victim that is incidental to the commission of a crime nonetheless qualifies as asportation." *Barerra*, 500 Mich at 17.

In this case, RC testified that defendant repeatedly drove her to hotels where they had sex. Additionally, RC testified that defendant would pick her up from her home or school and drive her to a location where they could have sex undisturbed, including having sex in his truck. RC explained that defendant would pick her up from her home and bring her to his home, which would make it difficult RC to get back home if she wanted to leave.

The record in this case shows that, similarly to the victim in *Barrera*, RC was repeatedly " 'removed' to a location where the sexual assault was less likely to be discovered, which rendered the location a 'place of greater danger' or 'a situation of greater danger.' " *Barrera*, 500 Mich at 22. Accordingly, the trial court did not err by assessing 15 points for OV 8. *Hardy*, 494 Mich at 438.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kathleen A. Feeney