*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　Plaintiff-Appellee,

v

TED ANTHONY MYER,

　　　　　Defendant-Appellant.

UNPUBLISHED
May 12, 2026
11:13 AM

No. 369624
Crawford Circuit Court
LC No. 2022-005120-FH

Before: MURRAY, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his conviction by jury trial of felonious assault, MCL 750.82. We affirm.

## I. BACKGROUND

According to the evidence at trial, this case arose out of defendant striking the victim with a shovel as the victim drove past him on an off-road vehicle (ORV). The victim was working as the assistant prosecutor for Crawford County at the time of the incident, and he returned home before calling Crawford County Sheriff's Deputy Caitlyn Peca to report the assault. Michigan State Police Trooper Patrick Goddard was dispatched to investigate after the victim called 911. Trooper Goddard interviewed the victim and took photos of his injuries, while Deputy Peca and another deputy went to the scene of the incident and identified defendant, who was on his nearby property. Trooper Goddard then went to defendant's property and questioned him about the incident. Defendant explained that the victim had been speeding and had run over defendant's leg. According to Goddard, defendant was walking unimpeded and showed no signs of being in pain, and there was no visible injury to his leg. Defendant denied hitting the victim with the shovel, but he also admitted that he had been angry because the victim was driving too fast and that he "kinda" swung the shovel at the victim as the victim drove past him. Defendant was arrested and jailed overnight. He was released the next day and checked into an emergency room several hours later, where he was treated for a leg injury.

Pictures of the victim's injuries and a body camera video of Trooper Goddard's interview of defendant were admitted into evidence. The Crawford County Jail Administrator testified that

defendant showed no signs of injury and did not seek medical attention while in jail. Defendant testified that he went straight to the hospital after his release from jail, and pictures defendant's mother took at a later date of bruising on defendant's leg were admitted into evidence. On cross-examination, the prosecution impeached defendant's claim that he went straight to the hospital after his release from jail with defendant's emergency room record, which stated that defendant had not arrived at the emergency room until about three hours after his release. As noted, the jury convicted defendant of felonious assault. Defendant then moved for a new trial or evidentiary hearing, arguing that his trial counsel was ineffective. The trial court denied the motion.

## II. ANALYSIS

Defendant argues that his trial counsel committed several acts of deficient performance, denying him the effective assistance of counsel under the Michigan and United States constitutions. *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023). To establish ineffective assistance of counsel and obtain a new trial, "a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Abcumby-Blair*, 335 Mich App 210, 228; 966 NW2d 437 (2020). Counsel is presumed competent, and the defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984) (quotation marks and citation omitted). "However, counsel's strategic decisions must be objectively reasonable," *Yeager*, 511 Mich at 488, and "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel," *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). The court "must first find the facts and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v Riley*, 468 Mich 135, 139; 659 NW2d 611 (2003).

## A. BODY CAMERA VIDEO

Defendant first argues that he was denied the effective assistance of counsel because his trial counsel did not move to suppress or redact the video of Trooper Goddard interviewing him. Defendant argues that his statements were obtained in violation of his Fifth Amendment rights, or, alternatively, that portions of the video in which Trooper Goddard commented on defendant's credibility were inadmissible.

## 1. FIFTH AMENDMENT

"Statements made by a defendant to the police during a custodial interrogation are not admissible unless the defendant voluntarily, knowingly, and intelligently waives the constitutional right against self-incrimination." *People v Barritt*, 325 Mich App 556, 561-562; 926 NW2d 811 (2018). Custody refers to "specifi[c] circumstances that are thought generally to present a serious danger of coercion." *Id.* at 562. To determine whether a party was in custody, courts must engage

in a two-step analysis. *Id.* First, we consider "whether, in light of the objective circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Id.* (quotation marks, citations, and alteration omitted). Relevant circumstances include:

> (1) the location of the questioning; (2) the duration of the questioning; (3) statements made during the interview; (4) the presence or absence of physical restraints during the questioning; and (5) the release of the interviewee at the end of the questioning. [*Id.* at 562-563 (citations omitted).]

The questioning at issue occurred before defendant was formally placed under arrest by Trooper Goddard. The prearrest questioning occurred at defendant's house, while defendant was not physically restrained, and lasted about five minutes. These factors weigh against a finding that defendant was in custody. However, defendant was surrounded by police officers, Trooper Goddard told defendant to "stay here with me" when defendant turned away from him, defendant was not told that he was free to leave, and defendant was arrested and taken to jail after the questioning was completed. Trooper Goddard also made several accusatory statements toward defendant, implied that he was lying, and asked defendant repeatedly why he hit the victim with a shovel, which weighs in favor of concluding defendant was in custody. *Barritt*, 325 Mich App at 573.

However, "determining whether an individual's freedom of movement was curtailed is the first step in the analysis, not the last." *Id.* at 580. We must also consider "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*."[1] *Id.* at 581 (brackets, quotation marks and citation omitted). Defendant's freedom of movement may arguably have been curtailed, but the environment in which he was questioned bore little resemblance to a station house questioning. Defendant was on his own property, was not taken to another location, and the prearrest questioning only lasted about five minutes. Defendant did not seem reluctant to speak to Trooper Goddard and did not ask to end the questioning or leave. Thus, defendant was not in custody for the purposes of the Fifth Amendment and the interview footage was admissible. Accordingly, defendant's trial counsel was not ineffective for failing to move to suppress the interview footage because such a motion would have been meritless. *Ericksen*, 288 Mich App at 201.

## 2. STATEMENTS ABOUT CREDIBILITY

Alternatively, defendant argues that his trial counsel was ineffective for failing to move to redact the portions of the body camera video in which Trooper Goddard commented on defendant's credibility. "It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). And "[a]s with matters of credibility, it is clear that a witness cannot express an opinion on the defendant's guilt or innocence

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

-3-

of the charged offense." *People v Bragdon*, 142 Mich App 197, 199; 369 NW2d 208 (1985). However:

> [W]here the proponent of the evidence offers an interrogator's out-of-court statements that comment on a person's credibility for the purpose of providing context to a defendant's statements, the interrogator's statements are only admissible to the extent that the proponent of the evidence establishes that the interrogator's statements are relevant to their proffered purpose. See MRE 401. Even if relevant, the interrogator's statements may be excluded under MRE 403 and, upon request, must be restricted to their proper scope under MRE 105. [*People v Musser*, 494 Mich 337, 353-354; 835 NW2d 319 (2013).]

Under this principle, "an interrogator's out-of-court statements must be redacted if that can be done without harming the probative value of a defendant's statements." *Id*. at 356.

In the video, Trooper Goddard told defendant that he could write two types of reports: one in which he said defendant told the truth, and one in which he said defendant was lying to him. He said that he knew defendant hit the victim with the shovel, and that he wanted defendant to be honest with him about what happened. After his arrest, defendant asked Trooper Goddard to look at the scene of the incident and continued to argue with Trooper Goddard and the deputies. Then, after defendant pointed out what he claimed to be ORV tracks in the road, Trooper Goddard said "nobody swerved over here and tried to hit you."

To the extent that Trooper Goddard's statements commented on defendant's credibility, they were necessary to give context to defendant's statements in the video, and were not unrelated to the questioning. See *Musser*, 494 Mich at 361 (interrogating detective's statements should have been suppressed where the detective's "lengthy narrative . . . consisted of statements directed at defendant that were unconnected to any question and could have been easily redacted without harming the probative value of defendant's statement"). Trooper Goddard's statements were brief, relevant to the subject of the questioning, and were either responses to defendant's statements or elicited statements from defendant which the prosecutor sought to admit. Redacting the video to only include half of the conversation would have confused the jury and harmed the probative value of defendant's statements. A motion by defendant's trial counsel to redact the footage would have correctly been denied, so trial counsel was not ineffective for failing to raise a meritless argument. *Ericksen*, 288 Mich App at 201.

## B. OPINION TESTIMONY

Defendant next argues that his trial counsel was ineffective because he failed to object to Trooper Goddard's opinion testimony about defendant's credibility, and because his trial counsel elicited Trooper Goddard's opinion about defendant's guilt during cross-examination. However, we conclude that defense counsel's cross-examination question about defendant's guilt was a reasonable, strategic decision under the circumstances. And while trial counsel's failure to object to Trooper Goddard's testimony about defendant's credibility *was* deficient performance, we hold that defendant was not prejudiced by the error.

Trooper Goddard testified that the physical evidence did not match defendant's version of events, that defendant gave inconsistent statements during his interview, and that in his experience people accused of assault tended to be dishonest with law enforcement. Trooper Goddard also used the words "claimed" and "allegedly" when referring to defendant's statements, which arguably implied that defendant was lying. And on cross-examination, defense counsel asked Trooper Goddard if he had already decided that defendant was guilty before he even viewed the scene of the incident, to which Trooper Goddard replied "[b]ased on the evidence, yes." The cross-examination question appeared to be a part of defense counsel's overall trial strategy of attacking the quality of the police investigation and Trooper Goddard's credibility. Because there was a strategic reason to elicit the improper testimony, counsel was not deficient for asking that question. However, there was no conceivable strategic reason or possible benefit for defendant's trial counsel not to object to the questioning about defendant's credibility or the general credibility of assault suspects. Thus, trial counsel did perform deficiently when he failed to object to those lines of questioning.

We cannot conclude, however, that defendant was prejudiced by his trial counsel's deficient performance. Although defendant argues that improper testimony about witness credibility is especially prejudicial in cases with no eyewitnesses or physical evidence, *People v Hawkins*, 507 Mich 949; 959 NW2d 179, 180 (2021), unlike in *Hawkins*, this case had physical evidence that corroborated the victim's version of events. The prejudicial police testimony in *Hawkins* also went well beyond Trooper Goddard's, with the testifying officer going so far as effectively shifting the burden of proof onto the defendant. *Id*. The potential prejudice of the improper testimony was also lessened here because the jury was given multiple opportunities to assess defendant's credibility for themselves. The jury was shown the entire video and defendant took the stand in his own defense, allowing the jury to hear his testimony and come to their own conclusion about defendant's credibility. Also, Trooper Goddard's use of "claimed" and "allegedly" in his testimony seemingly resulted because defendant had referred to events that Trooper Goddard had not personally witnessed. The possible damage to defendant's credibility from Trooper Goddard's single use of those words was minimal to nonexistent.

In the end, while Trooper Goddard's testimony may have been improper by attacking defendant's credibility, it was a minor part of trial and defendant's statements were afterward subject to credibility determinations by the jury. Accordingly, there was no reasonable probability that the outcome at trial would have been different had defendant's trial counsel objected to Trooper Goddard's improper testimony. Defendant's trial counsel was not ineffective in this instance.

## C. EVIDENCE OF VICTIM'S PROFESSION

Defendant also asserts that his trial counsel was ineffective by failing to object or move to suppress all evidence that the victim was a Crawford County assistant prosecutor at the time of the incident, which improperly bolstered the victim's credibility.

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *People v Reed*, 198 Mich App 639, 648 n 8; 499 NW2d 441 (1993), aff'd 449 Mich 375 (1995). Part of defense

counsel's overall trial strategy appeared to be to discredit the victim's version of events and police testimony by emphasizing the conflict of interest arising out of the victim's status as an assistant prosecutor and his preexisting working relationship with two of the investigating deputies. It was not objectively unreasonable for defense counsel to believe that evidence of the conflict of interest created by the victim's work as a prosecutor could damage the prosecution witnesses' credibility rather than bolster it. While trial counsel's effort to discredit the victim's version of events was unsuccessful, it is also not clear that the victim being an assistant prosecutor bolstered his credibility in the eyes of the jury. Defendant has not overcome the presumption that this decision was a matter of sound trial strategy. Thus, defense counsel was not ineffective.

## D. CUMULATIVE ERROR

Lastly, defendant argues that the cumulative effect of his trial counsel's errors warrants reversal.

When a defendant claims ineffective assistance of counsel, "[t]he cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Dobek*, 274 Mich App at 106. Here, the only instance of deficient performance was the failure to object to Trooper Goddard's opinion testimony about defendant's credibility. However, that instance of deficient performance did not sufficiently prejudice defendant to warrant reversal. Because there were no other errors at trial that might together have undermined the reliability of the verdict, reversal for cumulative error is not warranted.

Affirmed.

/s/ Christopher M. Murray
/s/ James Robert Redford
/s/ Michelle M. Rick

-6-